```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   |
COBALT MULTIFAMILY INVESTORS I,    |
LLC, et al.,                       |
                                   |
             Plaintiffs,           |
                                   |   06 Civ. 6468 (KMW) (MHD)
      -against-                    |
                                   |   OPINION AND ORDER
MARK A. SHAPIRO, et al.,           |
                                   |
             Defendants.           |
                                   |
-----------------------------------X
```
KIMBA M. WOOD, U.S.D.J.:

The court-appointed receiver (the "Receiver") for Plaintiffs Cobalt Multifamily Investors I, LLC, and its related, defunct entities (collectively, the "Cobalt entities"), filed this lawsuit against three individuals alleged to have been the principals of the Cobalt entities, and three sets of attorneys who provided professional services to the Cobalt entities at various times during their active corporate lives. The three individuals named as defendants are Defendants Mark A. Shapiro, Irving J. Stitsky, and William B. Foster (collectively, the "Individual Defendants"). The three sets of attorneys named as defendants are Defendants Robert F. Cohen and his firm, Cohen & Werz LLC (the "Cohen Defendants"); Martin P. Unger and his firm, Certilman Balin Adler & Hyman LLC (the "Certilman Defendants"); and Philip Chapman and his firm, Lum, Danzis, Drasco & Positan LLC (the "Lum Defendants") (collectively, the "Law Firm Defendants").

The Complaint alleges that the Individual Defendants engaged in a massive fraud on the investing public by setting up the Cobalt entities, and persuading members of the public to invest millions of dollars in these same entities through various misrepresentations and cold-calling schemes. (Compl. §§ 4, 51-87.) The Individual Defendants then allegedly misappropriated the majority of the funds invested in the Cobalt entities for their own personal use. (Compl. §§ 83-85.) The Complaint alleges that the Law Firm Defendants assisted the Individual Defendants in committing this investor fraud, and in subsequently looting the Cobalt entities of corporate assets. (Compl. §§ 94-137.)

As against the Individual Defendants, the Receiver asserts claims of common-law fraud, conversion, breach of fiduciary duty, breach of contract, and unjust enrichment.[1] As against the Law Firm Defendants, the Receiver asserts claims of breach of contract, breach of fiduciary duty, and legal malpractice. The Receiver also asserts separate claims of conversion and aiding and abetting fraud, conversion, and breach of fiduciary duty against the Cohen Defendants; and a claim of unjust enrichment against Defendant Cohen personally.

---

[1] Proceedings against the Individual Defendants are currently stayed pending the resolution of criminal charges filed against them, arising out of the same allegations of investor fraud at issue in this case.

In October 2006, the Law Firm Defendants each filed a motion to dismiss the complaint on various grounds, including that the Receiver lacks standing to assert his claims. By report and recommendation, dated November 28, 2007 (the "Report"), familiarity with which is assumed, Magistrate Judge Michael H. Dolinger recommended that the motions be granted in part and denied in part. Specifically, the Report concluded, in relevant part, that the Receiver has standing to assert his various claims against the Law Firm Defendants only to the extent that such claims are based on (1) the receipt by the Law Firm Defendants of fees or other payments from the Cobalt entities for professional services that were deficient, and (2) the alleged looting of the Cobalt entities' corporate assets.[2] (Report 48-49, 57-58.)

Based on this conclusion, the Report recommended that the Court dismiss the Receiver's claims of aiding and abetting fraud and breach of fiduciary duty against the Cohen Defendants.[3] The Receiver would therefore retain his legal malpractice claims

---

[2] The Report also concluded that (1) the Court has supplemental jurisdiction over the Receiver's claims (Report 26); (2) the Receiver is authorized to bring lawsuits to collect on claims of the Cobalt entities (Report 30); (3) the Receiver has adequately pleaded injury, causation, and damages with respect to the claims for which he has standing to assert (Report 59-60); and (4) the Receiver's request for an award of legal fees should not be stricken at this time (Report 62).

[3] The Report also recommended that the Court dismiss the Receiver's breach of contract and breach of fiduciary duty claims against the Law Firm Defendants as duplicative of his legal malpractice claims. (Report 61-62.)

3

against the Law Firm Defendants as delimited by the Report's standing ruling, his claims for conversion and aiding and abetting conversion against the Cohen Defendants, and his claim of unjust enrichment against Defendant Cohen personally. (Report 63.)  The Receiver, the Certilman Defendants, and the Lum Defendants each filed timely written objections to portions of the Report.

The Court has carefully reviewed the Report's thorough and nuanced analysis, and the parties' corresponding objections.  For the reasons set forth below, the Court grants the motions to dismiss.

**DISCUSSION**

The Court must review de novo those portions of the Report to which timely written objections have been filed.  See 28 U.S.C. § 636(b)(1) (2008); Fed. R. Civ. P. 72(b) (2008).

The parties' principal objections to the Report address the scope of the Receiver's standing to assert his legal malpractice claims against the Law Firm Defendants.[4]  The Report concluded

---

[4] The Certilman Defendants filed objections to the Report's preliminary conclusions that the Court has supplemental jurisdiction over the Receiver's claims (Report 26), and that the Receiver is authorized to bring lawsuits to collect on claims of the Cobalt entities (Report 30).  These objections, however, simply reprise the arguments the Certilman Defendants made in their initial submissions. (Certilman Objections 25.)  Where the objections filed are "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition, reviewing courts should review the report and recommendation for clear error." Edwards v. Fischer, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) (internal quotations omitted); accord Nelson v. Smith,

4

that the Receiver has standing to assert his legal malpractice claims only to the extent that such claims are based on (1) the receipt by the Law Firm Defendants of fees and other payments for the provision of professional services that were deficient, and (2) the alleged looting of the Cobalt entities' corporate assets. (Report 48-49, 57-58.)  The Receiver contends that his legal malpractice claims should not be so limited, and that he has standing to assert the full extent of his legal malpractice claims as pleaded in the Complaint.  The Certilman Defendants and the Lum Defendants contend that the Receiver lacks standing to assert his legal malpractice claims in any form, including as limited by the Report's standing ruling.  Reviewing the standing issue de novo, the Court concludes that the Receiver lacks standing to assert <u>any</u> of his claims, whether framed as legal malpractice or otherwise, against the Law Firm Defendants.[5]

---

618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).  Reviewing the Report's conclusions on these issues, the Court finds them to be well-reasoned and free of any "clear error on the face of the record."  Fed. R. Civ. P. 72(b) advisory committee's note; see also Nelson, 618 F. Supp. at 1189.  The Court therefore adopts the Report's reasoning and recommendations with respect to these issues, which are set forth on pages 19-30 of the Report.

[5] Because the Law Firm Defendants have moved to dismiss the complaint on standing grounds pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor."  Scutti Enters., LLC v. Park Place Entm't Corp., 322 F.3d 211, 214 (2d Cir. 2003).  To survive a motion to dismiss, plaintiff's allegations "must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  The Court may not dismiss an otherwise adequately pleaded complaint "based on [the Court's] assessment that the plaintiff will fail to find evidentiary support for his

## I. THE RECEIVER LACKS STANDING TO ASSERT ANY OF HIS CLAIMS AGAINST THE LAW FIRM DEFENDANTS.

### A. *The Wagoner Rule.*

In challenging the Receiver's standing, the Law Firm Defendants rely principally on the line of decisions beginning with Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir. 1991) ("Wagoner"), which addresses the issue of standing in the bankruptcy context. (Report 32-37.) In Wagoner, the Second Circuit stated the "well settled" principle that a bankruptcy trustee has standing to assert only those claims held by the bankrupt corporation. Id. at 118 (citing Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 434 (1972)). A bankrupt corporation lacks standing to assert claims against third parties for defrauding the corporation where those third parties assisted corporate managers in committing the alleged fraud.[6] Wagoner, 944 F.2d at 120; In re CBI Holding Co., Inc., 311 B.R. 350, 368-69 (S.D.N.Y. 2004) ("CBI Holding I"). Thus, under Wagoner, a bankruptcy trustee also lacks standing to assert such claims against third parties. See In re Bennett Funding Group, Inc., 336 F.3d 94, 99-100 (2d Cir. 2003).

---

allegations or prove his claim to the satisfaction of the factfinder." Id. at 1969 n.8.

[6] The Wagoner rule is derived from the law of agency, which generally imputes the misconduct of corporate managers, as agents of the corporation, to the corporation itself. See Wight v. BankAmerica Corp., 219 F.3d 79, 86-87 (2d Cir. 2000).

6

In Hirsch v. Arthur Anderson & Co., 72 F.3d 1085 (2d Cir. 1995), the Second Circuit applied the Wagoner rule to also preclude a bankruptcy trustee from asserting certain claims against third parties that are based in fraud, but are denominated as claims other than fraud (e.g., malpractice or breach of contract). See Hirsch, 72 F.3d at 1094-95 (applying Wagoner rule to preclude bankruptcy trustee's malpractice claim where the claim was based on allegations that the defendant assisted corporation managers in defrauding the corporation); see also In re CBI Holding Co., Inc., 318 B.R. 761, 766 (S.D.N.Y. 2004) ("CBI Holding II") (applying Wagoner rule to bar plaintiff's breach of contract, negligence, and fraud claims against defendant accounting firm where the claims were "premised on allegedly deficient auditing by [defendant] that failed to discover fraudulent acts committed by certain members of [corporate] management"); Breeden v. Kirkpatrick & Lockhart, LLP, 268 B.R. 704, 709 (S.D.N.Y. 2001) (applying Wagoner rule to preclude plaintiff's various claims against defendant professionals where the claims alleged that defendants' misconduct "allowed the [corporate principals] to perpetuate their fraudulent scheme").

### B. Under *Wagoner*, the Receiver Lacks Standing to Assert Any of His Claims Against the Law Firm Defendants.

In this case, although the Receiver is not a bankruptcy trustee, he occupies a position sufficiently analogous to a

bankruptcy trustee as to be subject to the standing limitations set forth in Wagoner and its progeny. See Scholes v. Lehmann, 56 F.3d 750, 753 (7th Cir. 1995) (comparing an equity receiver to a trustee in bankruptcy, and finding that "an equity receiver may sue only to redress injuries to the entity in receivership"); CBI Holding I, 311 B.R. at 368 (analogizing the position of the trustee to "anyone who similarly stands in the shoes of the bankrupt corporation").[7]

Applying the Wagoner rule to this case, the Court concludes that the Receiver lacks standing to assert any of his claims against the Law Firm Defendants. As the Report correctly concluded, although the Receiver frames his arguments under a variety of legal theories (e.g., breach of contract, breach of fiduciary duty, malpractice, conversion, and unjust enrichment), all of his claims are essentially based on three categories of allegations: (1) that the Law Firm Defendants aided the Individual Defendants in defrauding the investors of the Cobalt

---

[7] The Report observes that there is a "viable argument" that the Wagoner rule's standing limitations may not be applicable to the Receiver because, unlike a bankruptcy trustee, the Receiver "may be judicially authorized in appropriate cases to pursue claims on behalf of the investors in the defunct corporation." (Report 37 n.10.) The Receiver himself does not make this argument; accordingly, the Court does not address it here, except to mention that although the Report is correct in saying that a receiver's main purpose may be to "protect the interests of investors" (id.), that fact alone does not necessarily grant the receiver standing to assert claims held by investors, but not otherwise held by the entity in receivership. See Armstrong v. McAlpin, 699 F.2d 79, 89 (2d Cir. 1983) ("A receiver stands in the shoes of the corporation and can assert only those claims which the corporation could have asserted.").

8

entities, principally through omissions and misstatements in various investor documents, (2) that the Law Firm Defendants failed to provide accurate and complete legal advice to the Cobalt entities, at least in part to assist the Individual Defendants in engaging in such investor fraud, and (3) that the Cohen Defendants facilitated the diversion of corporate assets to the Individual Defendants through the Vail Trust. (Report 45.) So construed, the Receiver's claims all rest on allegations that the Law Firm Defendants assisted the Individual Defendants in committing fraud.

Because all of the Receiver's claims against the Law Firm Defendants are based on allegations that they assisted the Individual Defendants in committing fraud, the Receiver lacks standing to assert any of those claims, whether framed as legal malpractice or otherwise, pursuant to the Wagoner rule.[8] See

---

[8] The Report concluded that the Receiver has standing to assert his claims to the extent that he seeks recovery of fees paid by the Cobalt entities to the Law Firm Defendants because such fees represent "'some independent financial injury to the [Cobalt entities].'" (Report 47 (quoting Hirsch, 72 F.3d at 1094).) This conclusion is inconsistent with the Wagoner rule. As described above, the Hirsch court applied the Wagoner rule to bar a trustee's claims that were based on allegations that the defendant assisted corporate managers in committing fraud. Id. at 1094 n.6. The court applied Wagoner despite the fact that there was "at least a theoretical possibility that some independent financial injury to the [debtor company] might be established." Hirsch, 72 F.3d at 1094. Thus, contrary to the Report's conclusion, even if the Cobalt entities suffered some independent financial injury as a result of paying the Law Firm Defendants for allegedly deficient professional services, the Receiver lacks standing to assert claims for the recovery of such fees because the Law Firm Defendants provided such services at least in part to assist the Individual Defendants in defrauding the corporation. Id.

9

Hirsch, 72 F.3d at 1094 (precluding trustee from asserting malpractice claims against third parties "because of the Debtor's collaboration with the [third parties] in promulgating and promoting the [alleged fraud]"); In re Mediators, Inc., 105 F.3d 822, 826 (2d Cir. 1997) (finding that creditors committee suing on behalf of a bankrupt corporation does not have standing to assert aiding and abetting claims against professionals where such professionals "cooperat[ed] in the very misconduct that [the corporate principals] had initiated"); CBI Holding II, 318 B.R. at 766 (S.D.N.Y. 2004) (finding that bankruptcy disbursing agent lacks standing to assert breach of contract and negligence claims against third party accountants where "[t]he factual allegations giving rise to [the disbursing agent's] negligence and breach of contract claims are virtually identical to the allegations giving rise to [the disbursing agent's] fraud claims"); Breeden, 268 B.R. at 709 (finding that trustee's malpractice allegations against third party professionals were "sufficiently analogous" to claims for aiding and abetting the fraud of corporate principals as to "implicate the Wagoner rule and defeat the trustee's standing").[9]

---

[9] The Report observes that, "irrespective of the Wagoner analysis," the Receiver may seek to recover fees paid to the Law Firm Defendants for deficient professional services pursuant to his authority "under section 21(d) of the Securities Act . . . to pursue claims for conversion or misappropriation of the assets of the corporation that he is charged with representing." (Report 49 n.16 (citing cases).) Although it is certainly true that receivers have broad authority to "restore to a defrauded entity . . . that which was

10

**II. THE "ADVERSE INTEREST" EXCEPTION TO THE <u>WAGONER</u> RULE DOES NOT APPLY IN THIS CASE.**

Courts have recognized one narrow exception to the <u>Wagoner</u> rule – the "adverse interest" exception. For the exception to apply, "the [individual corporate principal] must have <u>totally abandoned</u> [the corporation's] interests and be acting <u>entirely</u> for his own or another's purposes." <u>Center v. Hampton Affiliates, Inc.</u>, 66 N.Y.2d 782, 784-85 (1985) (emphasis added); <u>accord</u> <u>In re Bennett Funding Group</u>, 336 F.3d at 100 (citing <u>In re Mediators Inc.</u>, 105 F.3d at 827). In those circumstances, the <u>Wagoner</u> rule does not apply and the corporation has standing to assert claims against a third party that assisted the corporate agent in defrauding the corporation. <u>In re Bennett Funding Group</u>, 336 F.3d at 100 (citing <u>Wight</u>, 219 F.3d at 87).

The Receiver cannot rely on the adverse interest exception to afford him standing to assert his claims against the Law Firm Defendants. As pleaded in the Complaint, the Individual Defendants' misconduct provided at least some financial benefit to the Cobalt entities. <u>See, e.g.,</u> Compl. §§ 73-74 (stating that the Cobalt entities used corporate funds accumulated by the

---

fraudulently diverted from its . . . custody or control," <u>SEC v. Shiv</u>, 379 F. Supp. 2d 609, 618 (S.D.N.Y. 2005), the cases cited by the Report do not support the proposition that fees paid to a party implicated in defrauding the receivership corporation constitute "fraudulently diverted" assets recoverable by a receiver. Absent any clear precedent on this ground, the Court declines to adopt the Report's "alternative analysis" on the standing issue, and applies the <u>Wagoner</u> rule as described above.

11

Individual Defendants' fraud to pay promised returns to some investors); Compl. § 84 (stating that the Cobalt entities raised approximately $22 million from investors, and that the "majority of the funds," but not all of the funds, were misappropriated for the personal use of the Individual Defendants); see also Report 50 n.19. Therefore, the Complaint alleges that the Individual Defendants did not "totally abandon[]" the interests of the corporation, and were not acting "entirely" for their own or another's purposes. See In re Alpha Star Ins. Grp. Ltd., No. 06 Civ. 1524, 2008 WL 435494, at *30 (Bkrtcy. S.D.N.Y. Feb. 19, 2008) (finding the adverse interest exception inapplicable based on allegations in the complaint that corporate principals acted, at least in part, in the interests of the corporation); CBI Holding II, 318 B.R. at 764-65 (holding that the adverse interest exception does not apply where there is "some evidence that various corporate purposes were served by the managers' acts of fraud"). The adverse interest exception thus does not apply in this case.[10]

---

[10] The Report concluded that to the extent that the Receiver's claims against the Law Firm Defendants are based on allegations that they aided the Individual Defendants in looting Cobalt of corporate assets, the claims "appear to fit within the 'adverse interest' exception." (Report 50.) As described above, however, the adverse interest exception applies only where the corporate agents have "totally abandoned" the interests of the corporation. Center, 66 N.Y.2d at 784-85. Thus, where a corporation benefits to any extent from the fraudulent acts of its agents, the agents cannot be said to have "totally abandoned" the interests of the corporation. See CBI Holding II, 318 B.R. at 765 (viewing the fraudulent acts of the corporation's managers as a whole when evaluating the applicability of

**CONCLUSION**

For the reasons set forth above, the Court concludes that the Receiver lacks standing to bring any of his claims against the Law Firm Defendants. Accordingly, the Law Firm Defendants' motions to dismiss are granted.[11] (Dkt. Nos. 21, 23, & 26.)

SO ORDERED.

Dated: New York, New York
March 28, 2008

*Kimba M. Wood*
Kimba M. Wood
United States District Judge

---

the adverse interest exception). In this case, although the Individual Defendants' looting may not have served any corporate purpose, the Individual Defendants' other fraudulent activities certainly did. (Report 50 n.19.) The adverse interest exception therefore does not apply here.

[11] Because the Court has granted the Law Firm Defendants' motions to dismiss on standing grounds, the Court need not address the parties' remaining objections to the Report.

13