UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  |
COBALT MULTIFAMILY INVESTORS I,   |
LLC, et al.,                      |
                                  |
            Plaintiffs,           |
                                  |   06 Civ. 6468 (KMW) (MHD)
      -against-                   |
                                  |   OPINION AND ORDER
MARK A. SHAPIRO, et al.,          |
                                  |
            Defendants.           |
                                  |
----------------------------------X
KIMBA M. WOOD, U.S.D.J.:

        The court-appointed receiver (the "Receiver") for Plaintiffs

Cobalt Multifamily Investors I, LLC, and its related, defunct

entities (collectively, "Cobalt"), filed suit against three sets

of attorneys and their law firms who provided professional

services to Plaintiffs before they became defunct.  These three

sets of attorneys and their law firms (collectively, the "Law

Firm Defendants") are: (1) Robert F. Cohen, and his firm Cohen &

Werz, LLC (collectively, the "Cohen Defendants"); (2) Martin P.

Unger, and his firm Certilman Balin Adler & Hyman, LLC

(collectively, the "Certilman Defendants"); and (3) Philip

Champan, and his firm Lum Danzis Drasco & Positan (collectively,

the "Lum Defendants").

        On March 28, 2008, the Court granted Law Firm Defendants'

motion to dismiss the Receiver's complaint ("Dismissal Order"),

relying in part on the Court's decision in Ernst & Young v.

1

<u>Bankruptcy Services (In re CBI Holding Co.</u>), 318 B.R. 761
(S.D.N.Y. 2004).[1]  Subsequently, the Second Circuit Court of
Appeals (the "Second Circuit") in <u>Bankruptcy Services, Inc. v.
Ernst & Young (In re CBI Holding Co.)</u>, 529 F.3d 432 (2d Cir.
2008), affirmed in part and reversed in part the Court's decision
in <u>In re CBI Holding Co</u>.

    In light of the Second Circuit's partial reversal in <u>In re
CBI Holding Co.</u>, the Receiver moves for reconsideration of the
motion to dismiss in this case ("Motion for Reconsideration").
The Court GRANTS the Motion for Reconsideration on the ground
that failure to do so would result in clear error.

    Accordingly, the Court proceeds to reconsider its prior
order dismissing the Receiver's claims for lack of standing.  The
Court in reconsidering the motion, reviews the Report and
Recommendation issued by Magistrate Judge Michael H. Dolinger on
November 27, 2007.  The Report concluded that the Receiver has
standing to bring malpractice and looting claims against the Law
Firm Defendants.  The Court adopts most of the Report's
recommendations, and, thus, GRANTS in part and DENIES in part the
Defendants' motion to dismiss.

**I. <u>Background</u>**

    **A. Facts**

───────────────

    [1] The Court notes that the undersigned was the presiding
judge in <u>Ernst & Young v. Bankruptcy Servs. (In re CBI Holding
Co.)</u>, 318 B.R. 761 (S.D.N.Y. 2004).

The Complaint alleges that Mark A. Shapiro, Irving J. Stitsky, and William B. Foster (collectively, "Individual Defendants" or "managers") engaged in a massive fraud on the investing public by founding the Cobalt entities and making egregious misrepresentations in order to persuade members of the public to invest millions of dollars in Cobalt.[2]  In the written materials disseminated to potential and actual investors, Individual Defendants allegedly misrepresented: (1) their personal and professional backgrounds, such as failing to disclose their past criminal histories; (2) Stitsky and Foster's involvement in Cobalt; (3) their plans for the investors' funds; and (4) the nature and scope of Cobalt's property holdings. Individual Defendants allegedly appropriated the majority of the funds invested in Cobalt for their own personal use.

The Complaint alleges that all of Law Firm Defendants assisted the Individual Defendants in committing investor fraud, and in subsequently looting the Cobalt entities of corporate assets.  Law Firm Defendants allegedly: (1) approved documents that they should have known contained material misrepresentations; (2) assisted the Individual Defendants in siphoning corporate funds into the Individual Defendants' bank accounts; and (3) helped conceal the Individual Defendants'

_____

[2] The Receiver also filed claims against the Individuals Defendants; those claims have been stayed pending criminal proceedings against them.

criminal activities from both investors and law enforcement.

In addition, Defendant Cohen, as counsel of and trustee to Vail Mountain Trust ("Vail"), allegedly: (1) helped create Vail; (2) transferred $9 million from Cobalt to Vail; (3) and permitted the Vail funds to be used by the Individual Defendants for their personal expenses.

The Receiver also alleges that there were over 300 shareholders in Cobalt, who were unaware of the managers' fraud. Pursuant to their shareholders agreement, the shareholders had the authority to remove managers for fraudulent conduct.[3]

In 2005, the Federal Bureau of Investigation raided Cobalt's offices as part of its criminal investigation of Cobalt and its managers. Soon thereafter, Cobalt became a defunct corporation. On July 20, 2006, the Court appointed the Receiver to marshal Cobalt's assets.

**B. Procedural History**

1. Complaint and Motion to Dismiss

On August 25, 2006, the Receiver filed suit against all the Law Firm Defendants on the grounds that Law Firm Defendants

---

[3] In the Complaint, the Receiver notes that Cobalt had two different classes of shareholders – Class A and Class B shareholders. The Receiver provides additional details about the shareholders and their authority in the briefing accompanying the Motion for Reconsideration. Because the Law Firm Defendants have had an opportunity to meaningfully respond to these factual allegations and the corresponding arguments, the Court considers all of the Receiver's allegations and arguments.

assisted Defendants in committing investor fraud, and then in looting Cobalt of its corporate assets.  The Receiver also brought several claims against Cohen and Cohen & Werz, including claims for aiding and abetting conversion, aiding and abetting fraud, and breach of fiduciary duties.[4]  Against Cohen alone, the Receiver brought claims of conversion and unjust enrichment.

In October 2006, the Law Firm Defendants filed a motion to dismiss all the claims in the Complaint.  The Court referred the motion to dismiss to Magistrate Judge Michael H. Dolinger for a Report and Recommendation.

### 2. Report and Recommendation

On November 27, 2007, Magistrate Judge Dolinger issued a Report and Recommendation ("the Report"), familiarity with which is assumed.  The Report recommended that the Court grant in part and deny in part the motion.  Specifically, the Report concluded, in relevant part, that the Receiver has standing to assert his legal malpractice claim and corporate looting claim against all the Law Firms Defendants.  The Report also concluded that the Receiver has standing to bring an aiding and abetting conversion claim against both Cohen and Cohen & Werz, and a conversion and unjust enrichment claim against Cohen.

### 3. Objections to the Report

---

[4] References to "breach of fiduciary duties" encompasses the Receiver's claims for breach of fiduciary duty and breach of duty of loyalty.

The parties' principal objections to the Report address whether the Receiver has standing to assert his legal malpractice and looting claims against the Law Firm Defendants.[5]   Law Firm Defendants argue that Receiver does not have standing to pursue any fraud-based claims against the Defendants.   The Receiver counters that it is not bringing fraud-based claims and that, even if it were bringing fraud claims, it has standing to bring these claims against the Law Firm Defendants.

    4.   <u>Dismissal Order</u>

On March 28, 2008, the Court granted Law Firm Defendants' motion to dismiss in its entirety.   In so doing, the Court deviated from the Report's recommendations.[6]   In the Dismissal Order, the Court found that "[b]ecause all of the Receiver's claims against the Law Firm Defendants are based on allegations they assisted the Individual Defendants in committing fraud, the Receiver lacks standing to assert <u>any</u> of those claims." (emphasis added).

In reaching this conclusion, the Court relied upon a line of cases beginning with <u>Shearson Lehman Hutton, Inc. v. Wagoner</u>, 944

---

[5] The Court must review <u>de novo</u> those portions of the Report to which timely written objections have been filed.   28 U.S.C. § 636(b)(1)(2008); Fed. R. Civ. P. 72(b).

[6] For the reasons discussed below, the Court finds that the Report's analysis was more consistent with the Second Circuit's standing doctrine than the Court's analysis was in the Dismissal Order.

F.2d 114 (2d Cir. 1991).  The Second Circuit in <u>Wagoner</u>
articulated the now well-settled principle that a bankruptcy
trustee has standing to assert only those claims that the
bankrupt corporation itself could have brought.  <u>Id.</u> at 118.  The
Court, in granting the Law Firm Defendants' Motion to dismiss,
relied upon <u>Wagoner</u> and its progeny, for the proposition that a
bankrupt corporation, and by extension, an entity that stands in
the corporation's shoes, lacks standing to assert claims against
third parties for defrauding the corporation where the third
parties assisted corporate managers in committing the alleged
fraud.[7]  <u>See</u> <u>In re Bennett Funding Group, Inc.</u>, 336 F.3d 94, 99-
100 (2d Cir. 2003).

The Court, in deciding that the Receiver lacked standing
under the <u>Wagoner</u> rule, rejected the Receiver's argument that the
"adverse interest exception" to the <u>Wagoner</u> rule was applicable.
The Court wrote that the adverse interest exception states that
if an individual corporate principal has "<u>totally abandoned</u> [the
corporation's] interests and [is] acting <u>entirely</u> for his own or
another's purpose," the <u>Wagoner</u> rule does not apply. (emphasis
added).  "In those circumstances[,] . . . the corporation has
standing to assert claims against the third party that assisted
the corporate agent in defrauding the corporation."

---

[7] This proposition is generally referred to as the
"<u>Wagoner</u> rule," and is rooted in the principle that agents are
generally acting in the interests of the principal.

The Court found that the adverse interest exception was inapplicable in this case because the Individual Defendants had not totally abandoned the interests of the corporation.  The Court stated:

> As pleaded in the Complaint, the Individual Defendants' misconduct provided at least some financial benefit to the Cobalt entities . . . . Therefore, the Complaint alleges that the Individual Defendants did not totally abandon [] the interest of the corporation, and were not acting entirely for their own or another's purposes.

Accordingly, the Court concluded that the adverse interest exception did not apply, and that Law Firm Defendants' motion to dismiss should be granted.

### 4. In re CBI Holding Co. Decision

On June 16, 2008, less than three months after the Court issued the Dismissal Order, the Second Circuit issued Bankruptcy Services, Inc. v. Ernst & Young (In re CBI Holding Co.), 529 F.3d 432 (2d Cir. 2008).  In In re CBI Holding Co., the Second Circuit considered the question at issue in the Dismissal Order – whether the corporation's managers can be deemed to have totally abandoned the interest of the corporation, and, thus whether the adverse interest exception to the Wagoner rule applies.

In In re CBI Holding Co., the principal managers for CBI Holding Companies, Inc. and its subsidiaries (collectively, "CBI") engaged in inventory fraud during fiscal years 1992 and 1993 as part of a scheme to deceive the company's lenders.  Id.

at 439-440.  During that period, Ernst & Young ("E&Y"), the accountants for CBI, stated that CBI's consolidated financial statements fairly presented CBI's financial position.  Id. at 440.

CBI filed for bankruptcy in 1994.  The United States Bankruptcy Court for the Southern District of New York appointed Plaintiff-Appellant Bankruptcy Services, Inc. ("BSI") as the dispersing agent for CBI.  BSI brought seven claims against E&Y, including fraud, negligent misrepresentation, breach of contract, and breach of fiduciary duty.

After a seventeen-day bench trial, the bankruptcy court held that CBI had standing to pursue these claims against E&Y.  The bankruptcy court made a factual finding that the adverse-interest exception to the Wagoner rule applied because CBI's managers had totally abandoned CBI's interests.

Subsequently, the district court reversed the bankruptcy court's decision that BSI had standing to pursue the fraud claims against E&Y.  In reaching this conclusion, the district court relied in part on its finding that there was "some evidence that various corporate purposes were served by the managers' acts of fraud" and, therefore, the fraud was not exclusively in the managers' interest.  Id. at 446.  Accordingly, the district court found that the adverse interest exception did not apply.

The Second Circuit reversed the district court's finding

9

that BSI does not have standing to assert fraud claims against CBI.  The Second Circuit explained that the bankruptcy court concluded as a <u>matter of fact</u> that CBI's management had totally abandoned CBI's interests, as required for the "adverse interest exception to be satisfied."  <u>Id.</u> at 449.  Accordingly, the district court in reviewing the bankruptcy court's conclusion that CBI's managers had totally abandoned CBI's interest, had only one question to consider: "[W]hether the bankruptcy court's factual finding of total abandonment was clearly erroneous."  <u>Id.</u> at 449.

The Second Circuit found that the bankruptcy court's finding was not clearly erroneous and, accordingly, BSI had standing to pursue fraud claims against E&Y.  In reaching this conclusion, the Second Circuit considered whether evidence that "various corporate purposes were served by the managers' acts of fraud" necessarily meant that the managers could not have totally abandoned the interest of the corporation. <u>Id.</u> at 551 (internal quotations and citations omitted).  The Second Circuit explained that the pertinent inquiry into whether managers have totally abandoned the interest of the company is an inquiry into the intent of the managers who engaged in the misconduct.  <u>Id.</u> Therefore, "[e]vidence that CBI <u>actually benefitted</u> from CBI's management's fraud does not make the bankruptcy court's finding that CBI's management did not <u>intend to benefit</u> the company

10

clearly erroneous." Id. (emphasis added).

     5. Motion for Reconsideration

On December 5, 2008, the Receiver filed a Motion for Reconsideration. The Receiver argued that the Court should reconsider its Dismissal Order because the Second Circuit's decision in In re CBI Holding Co. constitutes an intervening change of controlling law. Certilman and Lum Defendants filed timely objections to the Motion for Reconsideration.

**II. Motion for Reconsideration**

For the following reasons, the Court grants the Receiver's motion for reconsideration; failure to do so would result in clear error.

**A. Legal Standard**

Under Federal Rule of Civil Procedure ("Rule") 54(b), a Court's order or decision "is subject to revision at any time before the entry of judgment." A party to the action can request a revision by filing a motion for reconsideration. Fed. R. Civ. 54(b).

The Second Circuit has explained that the Court should limit Rule 54(b) revisions to instances in which "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167

(2d Cir. 2003).  Therefore, the Court will grant a motion for reconsideration only if the moving party demonstrates that one of these scenarios exists.

**B. Parties' arguments**

The Second Circuit's ruling that evidence that CBI benefitted from the management's fraud does not preclude a finding that the management has totally abandoned the interest of the company, is central to the instant case.

The Receiver argues that this ruling constitutes an intervening change of controlling law because it modifies the standard for assessing whether a corporation's principal has "totally abandoned" the corporation's interests.  The Law Firm Defendants contend that the Second Circuit's decision in In re CBI Holding Co. does not modify the Wagoner rule, and by extension the adverse interest exception; instead the case is "merely a standard-of-review case, holding that a District Court conducting an appellate review of a bankruptcy court ruling should not disturb the lower court's factual findings and substitute its own de novo findings."  The Court finds that neither of the parties accurately characterizes the Second Circuit's discussion of the total abandonment standard in In re CBI Holding Co..

**C. Analysis**

The Second Circuit in In re CBI Holding Co. applies a total

abandonment standard that is consistent with the standard previously articulated by New York State courts, the authority on the standard for assessing imputation under the <u>Wagoner</u> rule. The Second Circuit does not suggest that it is modifying the pertinent law.  The Second Circuit states that "it is important to <u>remember</u> that the 'total abandonment' standard looks principally to the intent of the managers engaged in misconduct." <u>In re CBI Holding Co.</u> 529 F.3d at 451 (emphasis added)(citing <u>Capital Wireless Corp. v. Deloitte & Touche</u>, 627 N.Y.S. 2d 794 (App. Div. 1995) ("[T]he issue [is] whether mismanagement of [the company] was the vehicle by which [the manager] intended to advance his own interest or whether it was simply incidental to his continued efforts to retain some economic viability in the company.")).

     The Second Circuit concluded that a court can find that a corporation's manager "totally abandoned" a corporation's interests even if the manager's actions also benefitted the corporation, because the relevant inquiry is whether the manager <u>intended</u> to benefit the corporation.

     The Court recognizes that the Second Circuit thereby rejected this Court's interpretation of the total abandonment requirement.  Therefore, the Court must reconsider its Dismissal Order, in which it found that the Receiver did not have standing because the managers' conduct resulted in a financial benefit to

Cobalt.  Failure to reconsider the Dismissal Order would result in clear error.  Accordingly the Court GRANTS the Receiver's motion for reconsideration.

## III.  Law Firm Defendants' Motion to Dismiss

Because the Court has granted the motion for reconsideration, the Court now must reconsider certain standing arguments raised in the Defendants' motion to dismiss.  The Court must reconsider whether the Receiver has standing to bring the following claims: (1) legal malpractice and corporate looting claims against all the Law Firm Defendants; (2) breach of fiduciary duties, breach of contract, aiding and abetting conversion, aiding and abetting breach of fiduciary duties, and aiding and abetting fraud claims against Cohen and Cohen & Werz; and (3) conversion and unjust enrichment claims against just Cohen.

Underlying all these claims is the question of whether the Receiver has standing to bring fraud-based claims against the Law Firm Defendants.[8]  More specifically, the crux of the issue before the Court is whether the adverse interest exception to the Wagoner rule applies here, and if so, whether the sole actor rule to the adverse interest exception also applies.

_____

[8] The Court finds no basis for reconsidering its conclusion in the Dismissal Order that (1) the Court has supplemental jurisdiction over the Receiver's claims; and (2) the Receiver is authorized to bring lawsuits on Cobalt's behalf.

After carefully reviewing the Report, the parties' objections, and the parties' briefing in conjunction with the motion for reconsideration, the Court finds, as did the Report, that the adverse interest exception to the Wagoner rule is applicable.  Accordingly, the Court finds that the Receiver has standing to bring the following claims: (1) legal malpractice and looting claims against all the Law Firm Defendants; (2) aiding and abetting conversion claim, breach of fiduciary duties, and breach of contract claims against both Cohen and Cohen & Werz; and (2) conversion and unjust enrichment claim against just Cohen.

**A. Legal Standard**

Law Firm Defendants have moved to dismiss the complaint on standing grounds pursuant to Rule 12(b)(6).  The Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor."  Scutti Enters., LLC v. Park Place Entm't Corp., 322 F.3d 211, 214 (2d Cir. 2003). To survive a motion to dismiss, plaintiff's allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). The Court may not dismiss an otherwise adequately pleaded complaint "based on [the Court's] assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  Id. at

15

1969 n.8.

**B.   The Receiver's Standing**

The Court in assessing whether the Receiver has standing to bring fraud-based claims against Law-Firm Defendants, considers the applicability of the Wagoner rule and its exceptions.[9]  In particular, the Court analyzes whether the adverse interest exception to the Wagoner rule applies, and whether the sole actor rule, an exception to the adverse interest rule, defeats standing.  For the following reasons, the Court concludes that the Receiver has standing to bring fraud-based claims against Law Firm Defendants.

1.   Adverse Interest Exception to Wagoner Rule after Second Circuit's decision in In Re CBI Holding Co.

---

[9] The Court, like the Report, finds unavailing the Receiver's claim that his claims are not fraud-based, but rather constitute negligence and malpractice claims that are entirely distinct from allegations of fraud.  The Receiver's claims against the Law Firm Defendants are so intertwined with the alleged fraud of Cobalt's managers, that the Court must analyze the applicability of the Wagoner rule in order to decide whether the Receiver has standing to bring its claims against Law Firm Defendants.  See In re CBI Holding Co., 529 F.3d at 448 (explaining that "breach of contract, negligence, and fraud, when committed by auditors, are a single form of wrongdoing under different names, and therefore, under the logic of Wagoner, a bankruptcy trustee does not have standing to bring any claims related to professional malpractice in the context of cooperative wrongdoing between the debtor and its auditors")(internal citations omitted); Hirsch v. Arthur Anderson & Co., 72 F.3d 1085 (2d Cir. 1995)(applying the Wagoner rule to preclude a bankruptcy trustee from asserting certain claims against third parties that are based in fraud, but are denominated as claims other than fraud (e.g., malpractice or breach of contract)).

As discussed above in the context of the motion for reconsideration, the adverse interest exception is a narrow exception to the <u>Wagoner</u> rule that is applicable only when "the [manager] <u>totally abandoned</u> [the corporation's] interests and [acted] <u>entirely</u> for his own or another's purposes." <u>Center v. Hampton Affiliates, Inc.</u>, 66 N.Y.2d 782, 784-85 (1985) (emphasis added). Courts assess whether a manager has totally abandoned the interest of the corporation through a fact-based inquiry into the managers' intent. <u>In re CBI Holding Co., Inc</u>, 529 F.3d at 448. If a Court finds that the adverse interest exception to the <u>Wagoner</u> rule applies, the corporation has standing to assert claims against a third-party that assisted the corporate agent in defrauding the corporation. <u>In re Bennett Funding Group</u>, 336 F.3d at 100 (citing <u>Wight v. BankAmerica Corp.</u>, 219 F.3d 79, 87 (2d Cir. 2000).

### 2.  The Sole Actor Rule

Courts have recognized an exception to the adverse interest exception – the sole actor rule. The sole actor rule requires that a court consider the identities of the principal, which is often the corporation, and the agents, which are often the managers and officers.

The Second Circuit explains "where the principal and agent are one and the same, the adverse interest exception is itself subject to an exception styled the 'sole actor' rule." <u>In re</u>

Mediators, Inc. v. Manney (In re Mediators, Inc.), 105 F.3d 822, 827 (2d Cir. 1997); In re CBI Holding Co., 529 F.3d at 453 n.9. The sole actor rule "imputes the agent's knowledge to the principal notwithstanding the agent's self-dealing because the party that should have been informed was the agent itself albeit in its capacity as principal."[10]  In Re Mediators, Inc., 105 F.3d at 827.

If, however, a corporation has owners or managers who are innocent of the fraud and could have stopped the fraud if they had been aware of the it, the sole actor rule does not apply.[11] In re CBI Holding Co., Inc., 311 B.R. at 373; In re CBI Holding Co., 529 F.3d at 453.  In that latter circumstance, the corporation is not a monolith that can be assumed to be aware of

---

[10] The principal need not be only one person for the sole actor rule to apply.  The sole actor rule can apply to a corporation that is controlled by "multiple people, so long as all of them were involved together in the fraud against the corporation."  In re CBI Holding Co., Inc., 311 B.R. at 373; See In re CBI Holding Co., Inc, 529 F.3d at 453 n.9 (finding that the sole actor rule does not apply because the managers were not the sole shareholders of the corporation, and there were no findings that the shareholders were complicit in the fraud); 546-552 W. 146th St. LLC v. Arfa, 863 N.Y.S. 2d 412, 414 (App. Div. 2008).

[11] Both the undersigned and the Second Circuit have declined to recognize an innocent insider exception as directly defeating the Wagoner rule.  In re CBI Holding Co., 311 B.R. at 371 (noting that some courts "have found applicable a second exception to the Wagoner rule (i.e., an exception to a presumption of imputation), separate and apart from the adverse interest exception," but declining to recognize this second exception). In re Bennett Funding Group, Inc. 336 F.3d at 101; In re CBI Holding Co., 529 F.3d at 447 n.5.

the agent's fraudulent conduct and to be expressly endorsing the agent's conduct.   See In re CBI Holding Co., 311 B.R. at 373 ("[W]hen the innocent insiders possessed the authority to stopped the fraud, the 'sole actor rule' does not apply, because the culpable agents who had totally abandoned the interests of the principal, and were thus acting outside of the scope of their agency, were not identical to the principal."). Therefore, the sole actor rule would be inapplicable.

       3.   Report's Analysis of Adverse Interest Exception and Sole Actor Rule

The Report stated that "the alleged action of Cobalt principals in looting Cobalt appears to fit within the 'adverse interest' exception" to the Wagoner rule.  The Report then addressed the question of whether the sole actor rule to the adverse interest exception applied.  The Report concluded that a determination as to whether the sole actor rule applied could not be made at the motion to dismiss stage.

       4.   Parties' Response to Report

The Receiver argues that the Report correctly concluded that it has standing to bring claims against Law Firm Defendants because (1) Cobalt's managers, Shapiro, Stitsy, and Foster, totally abandoned Cobalt's interests, thus triggering the adverse interest exception to the Wagoner rule, and (2) the sole actor rule is inapplicable because Cobalt's innocent shareholders could

have stopped the fraud by removing the managers had the fraud been disclosed by Law Firm Defendants.[12]   Accordingly, the Receiver asserts that the Report correctly concluded that Law Firms Defendants' motion to dismiss should not be granted.

Law Firm Defendants argue that the adverse interest exception to the <u>Wagoner</u> rule is inapplicable because the managers created Cobalt expressly for fraudulent purposes. According to Law Firm Defendants, companies established by managers who have an entirely fraudulent intent are not subject to the adverse interest exception because the agents are carrying out the founders' objectives.

The Law Firm Defendants assert that even if the Court were to find that the adverse interest exception applies, the Court should nonetheless find that the Receiver does not have standing. The Law Firm Defendants assert that under the sole actor rule the power of the shareholders to remove the managers is legally irrelevant because all the managers are alleged to have been involved in the fraud and, thus, the corporation was effectively a monolith.

---

[12] Cobalt had over 300 shareholders with Class A Membership Interests.  Pursuant to Cobalt's bylaws, Class A shareholders had the right to call meetings and vote on certain matters. Specifically, Class A shareholders had the right to remove Cobalt managers for a willful or grossly negligent violation of any provision of Cobalt's governing documents.

5.   <u>Analysis</u>

For the following reasons, the Court adopts the Report's recommendation that the adverse interest exception to the <u>Wagoner</u> rule is applicable, and that the sole actor rule does not apply.[13]

a.   <u>Adverse Interest Exception</u>

The Court evaluates whether the adverse interest exception to the <u>Wagoner</u> rule applies by considering whether Stitsky, Foster, and Shapiro intended to totally abandon the interests of Cobalt when they engaged in the fraudulent conduct detailed in the Complaint.  <u>See</u> <u>In re CBI Holding Co.</u>, 529 F.3d at 451.  The Court, accepting all factual allegations in the complaint as true and drawing all inferences from those allegations in the light most favorable to the Receiver, finds that the Cobalt managers intended to totally abandon the interests of Cobalt, or in the alternative, that the Court cannot find as a matter of law that they did not intend to totally abandon the interests of Cobalt.

The stated objective of Cobalt was the "acquisition and development of residential apartment properties ranging in size

---

[13] The Court's analysis differs from the Report's to the extent that the Court does not consider whether Cobalt's general counsel was an "innocent insider" who could have ended the fraud had she known about it.  <u>See</u> <u>In re CBI Holding Co.</u>, 311 B.R. at 371.  Because the Court finds that the presence of the shareholders with the authority to remove the managers defeats the sole actor rule, the Court need not reach the question of whether the allegedly innocent general counsel could have stopped the fraud.

from approximately 115 to 500 units and vacant land suitable for development of multifamily units." Consistent with Cobalt's stated objective, Cobalt purchased at least two real estate properties with investors' funds. Some of the early Cobalt investors were paid the promised 8% returns, which was funded with money acquired from Cobalt's newer investors.

The Receiver alleges that Cobalt managers engaged in conduct that demonstrates an intent to abandon the stated objectives of the corporation. The Cobalt managers allegedly "deposited and caused others [including Law Firm Defendants] to deposit all investor checks [in excess of $22 million] into various Cobalt bank accounts from which the investor funds were either promptly spent or transferred to other bank accounts" for the "personal benefit" of the Individual Defendants. Specifically, Shapiro allegedly used hundreds of thousands of dollars of investors' funds to pay for his "numerous expensive sports cars," for construction work on his home, and for access to a condominium in Miami Beach, Florida. Stitsky and Foster allegedly both established trusts for themselves and others through which they siphoned hundreds of thousands of dollars of investors' money into trusts for themselves.

These allegations support the Receiver's contention that Shapiro, Stitsky, and Foster had the intent to totally abandon Cobalt's interest.

The Court finds unavailing the Law Firm Defendants' argument that the adverse interest exception is inapplicable here because the managers set up a corporation expressly for the purpose of defrauding outsiders.  Law Firm Defendants assert that fraudulent agents cannot be found to totally abandon the interests of a corporation when the corporation itself has a fraudulent purpose. Implicit in this argument is the view that the interests of the corporation should be defined solely by considering the interests of the managers, and not by considering the interests of the shareholders as well.  Law Firm Defendants offer no compelling legal support for this position.[14]  Moreover, this position runs contrary to basic principles of corporate law that take into account the interests of the shareholders when defining the interest of the corporation.[15]  <u>See</u> John E. Moye, <u>The Law of</u>

---

[14] Law Firm Defendants' reliance on the following decisions is misplaced: <u>Hirsch</u>, 72 F.3d 1085, <u>In Re Bennett Funding Group, Inc.</u> 336 F.3d 94, and <u>American Tissue, Inc. v. Arthur Anderson, L.L.P.</u>, No. 02-7751, 2003 U.S. Dist. LEXIS 22137 (S.D.N.Y. Dec. 3, 2003).  These decisions do not support the proposition that the interests of a corporation should be defined solely by the interests of the managers when the corporation has shareholders with some supervisory powers, such as the power of removing managers.

[15] The Court construes Law Firm Defendants' argument as effectively a request to create a new exception to the <u>Wagoner</u> rule – an exception that states that when a corporation's managers create a corporation with an entirely fraudulent intent, the adverse interest exception to the <u>Wagoner</u> rule does not apply.
    The sole actor rule, for reasons addressed below, provides a mechanism for assessing whether the interests of the fraudulent managers and the corporation they create are one and the same.

<u>Business Organizations</u> ch. 6 (2005).

The Law Firm Defendants offer no other compelling reasons why the Court should not find that the managers totally abandoned the interests of the corporation.  The Court, therefore, finds the adverse interest exception applicable.

      b.  <u>Sole Actor Rule</u>

The Court now turns to the question of whether the sole actor exception applies.  The Law Firm Defendants argue that the sole actor rule is applicable because the managers had complete control over the day-to-day operations of Cobalt and, thus, the managers and the corporation were one and the same.  The Receiver asserts that the managers' control over Cobalt's day-to-day operations is legally irrelevant; the managers, serving as agents, were not the same as the shareholders, which constituted the principal.  For the following reasons, the Court finds that based on the allegations presented at the motion to dismiss stage, the sole actor rule is inapplicable.

Here, the corporation is the principal, with 300 allegedly

---

If, as Law Firm Defendants contend, the fraudulent managers and the fraudulent corporation have the same interests, then the sole actor rule will preclude the Receiver's standing to bring legal malpractice claims.  <u>See</u> <u>In re Bennett Funding Group</u>, 336 F.3d at 101.  If, however, the interests of the corporation, which includes the interests of the shareholders, diverge from the interests of the fraudulent managers, the Receiver should not necessarily be precluded from asserting the adverse interest exception to the <u>Wagoner</u> rule just because the founding managers had a fraudulent intent from the outset.

innocent shareholders, and the agents are the allegedly fraudulent managers.  The principal and agent are not one and the same and did not share the same interest in perpetuating fraudulent activity.

The presence of an innocent person or entity that could have stopped the fraud, as is the case here, defeats the sole actor exception.  In re CBI Holding Co., 311 B.R. at 373 ("When the innocent insiders possessed authority to stop the fraud, the 'sole actor rule' does not apply, because the culpable agents who had totally abandoned the interests of the principal, and were thus acting outside of the scope of their agency, were not identical to the principal."); In re CBI Holding Co., 529 F.3d at 543 n.9.

The shareholders had the authority to stop the fraud, and the Receiver alleges that they would have done so had they known about it.  Breeden v. Kirkpatrick & Lockhart, 268 B.R. 704, 710 (S.D.N.Y. 2001) ("When the innocent insiders possessed authority to stop the fraud, the 'sole actor rule' does not apply, because the culpable agents who had totally abandoned the interests of the principal, and were thus acting outside of the scope of their agency, were not identical to the principal.").  Therefore, the Court cannot view the actions of managers as actions on behalf of the shareholders.

Law Firm Defendants argue that the sole actor rule can apply

25

even if the shareholders are not involved in the fraud if the managers dominate and control a company, as they did here.[16]  Law Firm Defendants cite <u>Arfa</u>, 863 N.Y.S. 2d 412, in support of their argument that when managers dominate and control a company the sole actor rule applies.[17]  In <u>Arfa</u>, the First Appellant Division stated: "We agree with the federal courts' articulation of the 'sole actor' rule, that the adverse interest exception does not apply if the alleged wrongdoers were, at the time of their misconduct, either the <u>sole managers or the sole owners</u> of the plaintiff [corporation]." <u>Id.</u> (emphasis added).

The Court recognizes that some federal courts, including those in the Second Circuit, have stated that the sole actor rule applies when all of the managers are involved in the fraud, even if the shareholders are not involved in the fraud.  <u>See</u> <u>Grumman Olson Indus. v. McConnell (In re Grumman Olson Indus.)</u>, 329 B.R. 411, 425 (Bankr. S.D.N.Y. 2005); <u>Breeden</u>, 268 B.R. at 710.  In those decisions, the Courts found that the fraudulent managers had complete control over the corporation, and that there existed no persons or entities that could have stopped the fraud.[18]

---

[16] The parties do not dispute that Shapiro, Stitsky, and Foster dominated and controlled the Cobalt entities' day-to-day transactions.

[17] Law Firm Defendants recognize that the issue of imputation is a state law question.

[18] Law Firm Defendants do not cite, and the Court has not found, any cases in which the shareholders had the authority to

The Court finds these decisions to be inapplicable.  The Cobalt managers did not have complete control over the corporation, because the shareholders had the authority to remove the managers.[19]

The Court finds that the sole actor rule to the adverse interest exception is inapplicable.  Thus, the adverse interest exception to the <u>Wagoner</u> rule is not defeated by the sole actor rule, and the Receiver has standing to bring some of his fraud-based claims against the Law Firm Defendants.

3.   <u>Scope of Standing</u>

Having found that the Receiver's standing is not defeated by the <u>Wagoner</u> rule, the Court adopts the Report's recommendation that the Receiver has standing to bring legal malpractice and looting claims against all the Law Firm Defendants.[20]  The Court

---

remove the managers and yet the Court nonetheless applied the sole actor rule.

[19] Law Firm Defendants contend that the fraudulent offering documents were circulated before the shareholders became involved in Cobalt, and, therefore, the shareholders could not have stopped the fraud had they been aware of it.  The allegations in the complaint indicate that while some of the fraud did occur before the shareholders invested in Cobalt, the fraud was ongoing and extended for over a year after the shareholders invested in Cobalt.  Because the shareholders were in a position to stop the fraud while the fraud was ongoing, the Court rejects the Law Firm Defendants' argument that the shareholders could not have stopped the fraud.

[20] The Report concluded that the Receiver's legal malpractice claims against the Law Firm Defendants should be limited to (1) recovering the fees and other payments Cobalt paid for the provision of professional services that were deficient, and (2) the alleged looting of the Cobalt entities' corporate

also adopts the Report's recommendation that the Receiver had standing to bring an aiding and abetting conversion claim against both Cohen and Cohen & Werz and a conversion and unjust enrichment claim against just Cohen.  The Court finds that the Receiver has standing to bring claims for breach of fiduciary duties and breach of contract against Cohen and Cohen & Werz.[21]

The parties have not objected to the Report's conclusion that the following claims should be dismissed on the ground that they are duplicative of the legal malpractice claims: (1) breach of contract and breach of fiduciary duties claims against Certilman Defendants and Lum Defendants;[22] (2) aiding and

---

assets.  The Report states that the remaining legal malpractice claims belong to the defrauded investors.

Neither party has suggested that the legal malpractice and looting claims should be limited in this manner.  Accordingly, the Court finds no reason to impose such a limitation at this stage and declines to do so.

[21] The Report recommended that the Court dismiss the breach of contract and breach of fiduciary duties against Cohen and Cohen & Werz on the ground that they are duplicative of the malpractice claims.  The Receiver objects to the Report's recommendation.  The Receiver contends that Cohen, and by extension Cohen & Werz, committed malpractice in their capacity as counsel for Cobalt.  The Receiver also asserts that Cohen, and by extension Cohen & Werz, are liable for breach of contract and breach of fiduciary duties in Cohen's capacity as trustee for Vail.

The Court agrees with the Receiver that given Cohen's role as both counsel and trustee, the breach of contract and breach of fiduciary duties claims are not necessarily duplicative of the legal malpractice claims.  Therefore, the Court declines to adopt the Report's recommendation to dismiss the breach of contract and breach of fiduciary duties claims against Cohen and Cohen & Werz.

[22] The Report found that these claims were duplicative of the malpractice claims.

abetting fraud and aiding and abetting breach of fiduciary duties against Cohen, and Cohen & Werz.  Finding the Report's recommendation to be well-reasoned and free of clear error on the face of the record, the Court adopts the Report's recommendation to dismiss these claims. Fed. R. Civ. P. 72(b) advisory committee's note; see also Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).

### C.  Adequacy of the Complaint

Law Firm Defendants argue that even if the Court finds that the Receiver has standing to bring claims against the Law Firm Defendants, the Complaint should still be dismissed for failure to sufficiently plead the claims.  More specifically, Law Firm Defendants argue that the Receiver's claims are legally deficient because the Receiver fails to allege injury, damages, and causation.[23]

After considering the merits of the Law Firm Defendants' argument that the Receiver's claims are legally deficient, the Report concluded that: (1) many of the Law Firm Defendants' arguments in support of the motion to dismiss for failure to state a claim "reprise the Wagoner issues regarding standing;" and (2) the remaining arguments largely turn on factual issues that cannot be resolved at this stage of the litigation.  The

---

[23] The Court did not reach these issues in the Dismissal Order because the Court dismissed the Receiver's claims for lack of standing.

Report recommended that the Court deny the Law Firm Defendants'
motion to dismiss for failure to state a claim.

The Law Firm Defendants filed objections to this part of the
Report, none of which is compelling.  The Law Firm Defendants
argue that the Report erred when it found that the Complaint
alleges injury and damages.  The Court agrees with the Report's
conclusion that the Complaint adequately alleges injury and
damages when the Complaint states that Cobalt lost assets and
became liable to third-parties on account of the Law Firm
Defendants' malpractice.

The Certilman Defendants also challenge the Report's
conclusion that the Complaint adequately alleges causation and
proximate causation.  The Court finds Certilman Defendants'
objections unpersuasive.  The Complaint alleges that Certilman
Defendants reviewed and approved documents for Cobalt that they
knew contained material misrepresentations about the managers'
criminal and professional pasts and mismanagement of Cobalt's
funds.  Without the benefit of discovery, the Court cannot reject
the Receiver's argument that Certilman Defendants' failure to
meet its fiduciary duties to inform Cobalt of this material
misrepresentation, was a proximate cause of Cobalt's injuries.

Accordingly, the Court adopts the Report's recommendation to
deny the Law Firm Defendants' motion to dismiss, finding that the
Receiver correctly concluded that the Receiver has adequately

pled the claims for which he has standing to bring.  Accordingly, none of the Receiver's claims are dismissed pursuant to Rule 12(b)(6).

## IV.  Conclusion

For the foregoing reasons, the Court GRANTS the Receiver's motion for reconsideration (Docket Entry 75).  Upon reconsideration, the Court GRANTS Defendants' motion to dismiss the following claims: (1) breach of contract and breach of fiduciary duties claims against Certilman Defendants and Lum Defendants; and (2) aiding and abetting fraud and aiding and abetting breach of fiduciary duties against Cohen, and Cohen & Werz.  The Court DENIES the Law Firm Defendants' motion to dismiss the following claims: (1) legal malpractice and corporate looting claims against all the Law Firm Defendants; (2) aiding and abetting conversion, breach of fiduciary duties, and breach of contract claims against both Cohen and Cohen & Werz; and (2) conversion and unjust enrichment claims against just Cohen.

By July 28, 2009, the parties shall provide the Court a joint proposed scheduling order.

SO ORDERED.

Dated: New York, NY
      July **15**, 2009

_Kimba M. Wood_
Kimba M. Wood
United States District Judge

31