UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  |
COBALT MULTIFAMILY INVESTORS I,   |
LLC, et al.,                      |
                                  |
              Plaintiffs,         |
                                  |   06 Civ. 6468 (KMW) (MHD)
      -against-                   |
                                  |   OPINION AND ORDER
MARK A. SHAPIRO, et al.,          |   ON MOTION FOR
                                  |   RECONSIDERATION OF
              Defendants.         |   JULY 2009 ORDER
                                  |
----------------------------------X
KIMBA M. WOOD, U.S.D.J.:

## I. Introduction

The court-appointed receiver (the "Receiver") for Plaintiffs Cobalt Multifamily Investors I, LLC, and its related, defunct entities (collectively, "Cobalt"), filed suit against numerous Defendants, including three sets of attorneys and their law firms ("Law Firm Defendants") who provided professional services to Cobalt. Law Firm Defendants moved to dismiss the claims against them on the ground that the Receiver lacks standing. On March 28, 2008, the Court granted the motion to dismiss the Receiver's claims against Law Firm Defendants.

In light of a subsequent decision issued by the Court of Appeals for the Second Circuit, Bankruptcy Services, Inc. v. Ernst & Young ("CBI Holding Co."), 529 F.3d 432 (2d Cir. 2008), the Receiver moved for reconsideration of the motion to dismiss. On July 15, 2009, the Court granted the motion for

1

reconsideration on the ground that failure to do so would result in clear error.  On reconsideration, the Court granted in part and denied in part Defendants' motion to dismiss.  Relevant to the instant motion, the Court denied Law Firm Defendants' motion to dismiss Plaintiffs' legal malpractice and corporate looting claims.

One set of Law Firm Defendants, Martin P. Unger and his firm, Certilman Balin Adler & Hyman, LLC (collectively, "Certilman Defendants"), now moves for reconsideration of the Court's July 15, 2009 Order (hereinafter, "July 2009 Order"). Certilman Defendants submit that the Court committed clear error in the July 2009 Order by: (1) misapplying the adverse interest exception to the Wagoner rule; and (2) misapplying the sole actor exception to the adverse interest exception.  Certilman Defendants also raise a new argument that dismissal of all claims against them is proper because they, in their role as outside attorneys for Cobalt, did not owe a fiduciary duty to shareholders and future shareholders.

In the alternative, Certilman Defendants argue that the Court should certify the July 2009 Order for an immediate appeal to the Second Circuit pursuant to 28 U.S.C. § 1292(b).

For the reasons discussed below, Certilman Defendants have not established that the Court committed clear error, or that the July 2009 Order should be certified for immediate appeal

pursuant to 28 U.S.C. § 1292(b).  Accordingly, the Court DENIES Certilman Defendants' motion for reconsideration and DENIES the motion for certification for an immediate appeal.

## II. Legal Standard on Motion for Reconsideration

Federal Rule of Civil Procedure ("Rule") 54(b) provides that a court's order or decision "is subject to revision at any time before the entry of judgment."  A party to the action can request a revision by filing a motion for reconsideration.  Fed. R. Civ. 54(b); S.D.N.Y. Local Civ. R. 6.3.

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting In re Health Mgmt. Sys., Secs. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  "Whether to grant or deny a motion for reconsideration . . . is in the sound discretion of a district court judge."  Greenwald, 2003 WL 660844, at * 1 (internal quotation marks and citation omitted).

A district court should limit Rule 54(b) revisions to instances in which "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003).  A

party moving for reconsideration must set forth "the matters or controlling decisions which [it] believes the court has overlooked."  S.D.N.Y. Local Civ. R. 6.3.

Reconsideration is appropriate where the court has overlooked "controlling decisions" that, "had they been considered, might have reasonably altered the result." Greenwald v. Orb Commc'ns & Mktg., Inc., No. 00-1939, 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003) (quotation marks and citations omitted).  "Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York." Langsam v. Vallarta Gardens, No. 08-2222, 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009).  Where the movant fails to show that any controlling authority has been overlooked, and merely offers substantially the same arguments offered on the original motion, the motion for reconsideration must be denied.  See Shrader v. CSX Tramp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999) ("Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court.").

Courts should not grant a motion for reconsideration in order to allow a party "[to] advance new facts, issues or

arguments not previously presented to the Court." Shamis, 187
F.R.D. at 151 (internal quotations and citations omitted); see
also Brown v. Barnhart, No. 04-2450, 2005 WL 1423241, at *1
(S.D.N.Y. June 16, 2005).

**III. Analysis of Arguments in Support of Reconsideration**

> **A.   Application of Adverse Interest Exception**

>> 1. Legal Standard

A receiver or trustee representing a bankrupt corporation
generally does not have standing to assert claims against third
parties for defrauding the corporation where the third parties
assisted corporate managers in committing the alleged fraud.
See In re Bennett Funding Group, Inc., 336 F.3d 94, 99-100 (2d
Cir. 2003).  This legal principle is based on the Wagoner rule,
which states that a bankruptcy trustee has standing to assert
only those claims that the bankrupt corporation itself could
have brought.  See Shearson Lehman Hutton, Inc. v. Wagoner, 944
F.2d 114, 120 (2d Cir. 1991).

The adverse interest exception is an exception to the
Wagoner rule that is applicable when the corporate managers
"totally abandoned [the corporation's] interests and [acted]
entirely for his own or another's purposes." Center v. Hampton
Affiliates, Inc., 66 N.Y. 2d 782, 784-85 (1985).  Determination
of the exception's applicability requires a court to engage in a
fact-specific inquiry.  Such an inquiry may include

consideration of (1) the manager's intent with respect to abandoning the corporation's interests, (2) the nature and extent of the benefit (if any) obtained by the manager as a result of the fraudulent conduct, (3) the nature and extent of the benefit (if any) received by the corporation itself as a result of the fraudulent conduct, (4) the various financial losses caused by the fraudulent conduct, and (5) other dynamics and details of the fraud relevant to analysis the party's standing to sue.  See In re CBI Holding Co., Inc., 529 F.3d at 451-53.

If a court finds that the adverse interest exception applies, the receiver or trustee representing the bankrupt corporation has standing to assert claims against a third party that assisted the corporate agent in the fraudulent conduct.  In re Bennett Funding Group, 336 F.3d at 100 (citing Wight v. BankAmerica Corp., 219 F.3d 79, 87 (2d Cir. 2000).

2. Defendants' Argument

Certilman Defendants submit that this Court "misapprehended or misinterpreted" the Second Circuit's holding in CBI Holding Co. such that the Court wrongly "render[ed] ultimate human intent the touchstone of the adverse interest exception."  Defs. Mem. at 6 (D.E. 87).  According to Certilman Defendants, the Court misinterpreted CBI Holding Co. as setting forth an intent-based standard that requires a court to consider only the

subjective intent of a corporation's managers when deciding whether those managers "totally abandoned" the interests of a corporation.

In support of their argument, Certilman Defendants emphasize two post-CBI Holding Co. court decisions, one issued by a court in this district, Kirschner, as Trustee of the Refco Litigation Trust, v. Grant Thornton LLP (hereinafter "Refco"), No. 07-11604, 2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009), and one issued by the Delaware Chancery Court, American International Group, Inc. v. Greenberg (hereinafter "AIG"), 965 A.2d 763 (Del. Ch. 2009).

### 3. Analysis

As an initial matter, the post-CBI Holding Co. cases cited by Certilman Defendants do not constitute an "intervening change in controlling law." Langsam, 2009 WL 2252612, at *2. The Certilman Defendants seek to relitigate the already decided issue of application of the adverse interest exception, based primarily on the non-controlling decisions in Refco and AIG. Reconsideration is not warranted under such circumstances. Shamis, 187 F.R.D. at 151.

Nevertheless, in the interests of fairness and full due process, the Court reviews the adverse interest analysis in its July 2009 Order. In its decision, the Court applied a fact-specific inquiry that considered the managers' intent to

determine whether the Cobalt managers (Shapiro, Stitsky, and

Foster) "totally abandoned" the interests of Cobalt:

> The Court evaluates whether the adverse
> interest exception to the Wagoner rule
> applies by considering whether Stitsky,
> Foster, and Shapiro intended to totally
> abandon the interests of Cobalt when they
> engaged in the fraudulent conduct detailed
> in the Complaint. See In re CBI Holding Co.,
> 529 F.3d at 451. The Court, accepting all
> factual allegations in the complaint as true
> and drawing all inferences from those
> allegations in the light most favorable to
> the Receiver, finds that the Cobalt managers
> intended to totally abandon the interests of
> Cobalt, or in the alternative, that the
> Court cannot find as a matter of law that
> they did not intend to totally abandon the
> interests of Cobalt.
> . . .
> The Cobalt managers allegedly "deposited and
> caused others [including Law Firm
> Defendants] to deposit all investor checks
> [in excess of $22 million] into various
> Cobalt bank accounts from which the investor
> funds were either promptly spent or
> transferred to other bank accounts" for the
> "personal benefit" of the Individual
> Defendants. Specifically, Shapiro allegedly
> used hundreds of thousands of dollars of
> investors' funds to pay for his "numerous
> expensive sports cars," for construction
> work on his home, and for access to a
> condominium in Miami Beach, Florida. Stitsky
> and Foster allegedly both established trusts
> for themselves and others through which they
> siphoned hundreds of thousands of dollars of
> investors' money into trusts for themselves.
> These allegations support the Receiver's
> contention that Shapiro, Stitsky, and Foster
> had the intent to totally abandon Cobalt's
> interest.

Opinion & Order at 21-22, July 15, 2009, D.E. 85 (emphasis
added).  The Court concluded that the adverse interest exception
applies and the Receiver has standing to bring its claims
against Law Firm Defendants.  (Id. at 23-24.)

In CBI Holding Co., the Second Circuit endorsed the
principle that the "total abandonment" standard used to
determine application of the adverse interest exception "looks
principally to the intent of the managers engaged in
misconduct."  In re CBI Holding Co., Inc., 529 F.3d at 451
(emphasis added).  Upon review of its July 2009 Order, the Court
recognizes that its analysis may be read to have placed a
disproportionate emphasis on the element of "intent" in finding
that the adverse interest exception applies.  It is therefore
appropriate to determine whether its analysis resulted in an
improper conclusion warranting correction of a "clear error"
that would otherwise cause manifest injustice.  See Color Tile
Inc., 322 F.3d at 167.

Having reexamined the record and the parties' arguments,
the Court finds that the adverse interest exception to the
Wagoner rule is applicable based on the allegations set forth in
the complaint.  A comprehensive analysis reveals numerous
factors supporting such this conclusion, including: (1) the
apparent intent of Shapiro, Stitsky, and Foster to totally
abandon Cobalt's interest through their siphoning of investor

and corporate funds for their personal benefit, (2) Law Firm
Defendants' awareness of the managers' misappropriation of
investor funds and failure to advise Cobalt of such misconduct,
(3) Law Firm Defendants' assistance in the managers'
misappropriation of investor funds, (4) the resulting harm to
the corporation, and (5) other relevant factual allegations
discussed in the Magistrate Judge's Report and Recommendation.
Accordingly, reconsideration and modification of the July 2009
Order is not warranted.

The holdings of the courts in Refco and AIG do not alter
the Court's analysis or decision.  In Refco, Judge Lynch stated
that "facts related to intent could contribute to the
explication of how a fraud worked and to whose benefit it
accrued" but that a fraud participant's intent is not the
"'touchstone' of the [total abandonment] analysis."  Refco, 2009
WL 1286326, at *7.  In finding that the plaintiff lacked
standing to bring claims against third party defendants, Judge
Lynch addressed the Refco Trustee's arguments with respect to
how the adverse interest exception analysis should be applied in
that specific case.  The Refco decision in no way rejects the
Second Circuit's analysis in CBI Holding Co, which this Court
follows in reaching its conclusion in this matter.

Basic principles of standing were critical to the Refco
court's judgment: the insiders' alleged conduct had not harmed,

but had instead benefited, the corporation.  As the Refco court
held, the trustee (comparable to the Cobalt Receiver), "standing
in the shoes of the corporate debtor, 'must allege personal
injury [to the corporation] fairly traceable to the [insiders']
alleged unlawful conduct [that is] likely to be redressed by the
requested relief.'"  Id. at *7 (quoting Allen v. Wright, 468
U.S. 737, 751 (1984)).  The Trustee had "pleaded no facts that
would support that the insiders . . . embezzle[d] Refco's
assets, for example, by diverting the cash infusion into
personal accounts, or by any other conduct that would be
recognized as 'totally adverse' to the corporation."  Id. at *9.

     The instant case presents fundamentally different factual
allegations.  The Receiver alleges that Cobalt's managers
diverted corporate funds into private accounts for personal
benefit, an act that was "totally adverse" to the corporation.
Cobalt was monetarily harmed, and the Receiver has standing to
seek a remedy from Law Firm Defendants for their alleged role in
this misconduct.  The Court recognizes no conflict in legal
analysis between its determination as explained above and the
Refco decision.

     The Delaware Chancery Court's AIG decision articulates a
similar factual analysis to Refco, and is itself based on
allegations distinguishable from those in the instant case:

> [The adverse interest] exception only applies when the corporate insiders have acted entirely for their own benefit and without any intention to benefit the corporation. That is not the situation that existed here. <u>The pled facts do not support any inference except that [the corporate insiders] wanted AIG to benefit in the first instance from the misconduct</u>, and that they would derive their gains from those reaped by AIG, in the form of higher actual revenues, higher reported earnings, and a higher stock price.

<u>American International Group, Inc.</u>, 965 A.2d at 827 (emphasis added).

The <u>AIG</u> case is of little or no application with respect to the case before this Court, which involves allegations that managers looted, siphoned, and otherwise misappropriated corporate or investor funds.[1]

    4.  <u>Conclusion</u>

The decisions cited by Certilman Defendants state that the subjective intent of a corporation's managers <u>is</u> relevant to the court's analysis of whether the adverse interest exception

---

[1] Certilman Defendants' reliance on dicta in <u>In re Parmalat Securities Litigation</u>, No 04-MD-1653, 2009 WL 2996509 (S.D.N.Y. Sept. 21, 2009) is also without merit. In <u>Parmalat</u>, Judge Kaplan noted that, in the <u>CBI Holding Co.</u> decision, the Second Circuit's "assumption" about the substantial weight to be given corporate managers' "personal subjective intent" with respect to the adverse interest exception analysis may not have constituted a holding of the case. <u>In re Parmalat Securities Litigation</u>, 2009 WL 2996509, at *12. However, Judge Kaplan's brief examination of the issue was irrelevant to the disposition of the case, which was "governed by the law of Illinois or North Carolina," not New York. <u>Id.</u>

applies.   These decisions are, in the main, consistent with this Court's holding, which utilizes the analysis set forth in <u>CBI Holding Co.</u> by looking "principally," but not exclusively, "to the intent of the [corporate] managers engaged in misconduct." <u>In re CBI Holding Co., Inc.</u>, 529 F.3d at 451.  Based on its careful review of the facts and applicable law, the Court finds no basis for modification of its decision on the application of the adverse interest exception for purposes of determining the Receiver's standing to maintain its claims against Law Firm Defendants.

**B. Application of Sole Actor Exception**

    1.   <u>Legal Standard</u>

The sole actor rule is an exception to the adverse interest exception that, if applicable, precludes the trustee or receiver of a bankrupt corporation from bringing claims against third parties who allegedly assisted in misconduct.  It requires a court to consider the identities and relationship of the principal, which is often the corporation, and the agents, who are often the managers.  "Where the principal and agent are one and the same, the adverse interest exception is itself subject to an exception styled the 'sole actor' rule." <u>In re Mediators, Inc. v. Manney</u>, 105 F.3d 822, 827 (2d Cir. 1997).  The sole actor rule "imputes the agent's knowledge to the principal notwithstanding the agent's self-dealing because the party that

should have been informed was the agent itself albeit in its
capacity as principal." Id. at 827.  If, however, a corporation
has owners or managers who were innocent of the fraud and could
have stopped the fraud if they had been aware of it, the sole
actor rule will not apply.  In re CBI Holding Co., Inc., 529
F.3d at 453.

> 2.  Defendants' Argument

Certilman Defendants argue that this Court "misapprehended
or misinterpreted" case law with respect to application of the
sole actor exception.  Defs. Mem. at 12-16 (D.E. 87).
Application of the sole actor exception, Certilman Defendants
submit, should result in denial of standing to the Receiver to
bring claims against Law Firm Defendants even if the adverse
interest exception were to apply.  In support of this argument,
they assert that "Shapiro, Stitsky and Foster are pleaded to
have been the sole owners and managers of Cobalt at the time
[Cobalt] was created and the fraud [was] put into effect, and
Cobalt therefore knew from the start that it was a fraudulent
enterprise." (Id. at 12.)

> 3.  Analysis

Certilman Defendants have presented no "intervening change
in controlling law" and no overlooked "controlling decisions"
that would reasonably alter the Court's July 2009 Order.  See
Langsam, 2009 WL 2252612, at *2; Greenwald, 2003 WL 660844, at

*1.  Where, as is the case here, the movant offers arguments
already considered by the Court, reconsideration is not
warranted.  See Shrader, 70 F.3d at 257.

The Court has previously addressed Law Firm Defendants'
argument that the sole actor exception must apply based on the
fact that, at the time the alleged Ponzi scheme was created, the
"bad actors" were "Cobalt's sole managers and shareholders."
Defs. Mem. at 6 (D.E. 87) (emphasis in original).  In its July
2009 Order, the Court considered and rejected this argument:

> The allegations in the complaint indicate
> that while some of the fraud did occur
> before the shareholders invested in Cobalt,
> the fraud was ongoing and extended for over
> a year after the shareholders invested in
> Cobalt. Because the shareholders were in a
> position to stop the fraud while the fraud
> was ongoing, the Court rejects the Law Firm
> Defendants' argument that the shareholders
> could not have stopped the fraud [and finds
> that the sole actor exception does not
> apply].

Opinion & Order at 27, n.19, July 15, 2009 (emphasis added).

Certilman Defendants' contentions with respect to the
applicability of the sole actor exception are belied by the
pleadings.  The Complaint provides specific factual allegations
about Certilman Defendants' participation in fraudulent conduct
both before and after the approximately 300 shareholders
invested and became involved in Cobalt.  (Compl. ¶¶ 50, 113-

121.)  Analysis thus should not be limited to the inception of the alleged fraudulent scheme.

The Receiver has further alleged Certilman Defendants' contribution to the managers' corporate looting: "[Certilman Defendants] knew that Shapiro was misusing investor funds for his own benefit and extracting undisclosed fees from investor funds.  Nonetheless, [Certilman Defendants] did not advise Cobalt that this conduct must be stopped and that the July PPM should be amended."  (Compl. ¶ 113.)  Viewed in the context of the Complaint as a whole, the Receiver has sufficiently pled Law Firm Defendants' participation in misconduct committed after the shareholders invested and gained influence in the company, which was adverse to Cobalt and led to the alleged harm to the corporation.[2]  See In re CBI Holding Co., Inc., 529 F.3d at 453, n.9.

### 4.  Conclusion

Certilman Defendants' arguments in support of a finding that the Receiver lacks standing based on the sole actor

---

[2] The scope of Law Firm Defendants' liability to Cobalt, if any, will be based on factual determinations, on a motion for summary judgment or at trial, as to the alleged misconduct, the consequent harm, and the extent to which the Receiver, as opposed to creditors, is entitled to a remedy.  See Global Crossing Estate Representative v. Winnick, No. 04-2558, 2006 WL 2212776, at *15 (S.D.N.Y. Aug. 03, 2006) (finding that the applicability of the Wagoner rule and its exceptions "may hinge on certain fact-based considerations that cannot be addressed at the pleadings stage").

exception have been fully briefed by the parties and considered by the Court in its July 2009 Order.  Those arguments remain without merit.  Reconsideration is not warranted on the issue of the sole actor exception.

### C. New Arguments on Law Firm Defendants' Fiduciary Duty

Certilman Defendants submit, for the first time, that the Receiver does not have standing to bring claims against Law Firm Defendants because Law Firm Defendants, acting as outside attorneys (as opposed to in-house attorneys), did not owe a fiduciary duty to shareholders and future shareholders.  The Court need not address this argument because Certilman Defendants have not previously raised it.  See Shamis, 187 F.R.D. at 151; S.D.N.Y. Local Rule 6.3.

Even if the Court were to consider this argument's merit, there is no clear error warranting reconsideration of the July 2009 Order.  The decisions cited by Certilman Defendants stand for the proposition that outside attorneys, like Law Firm Defendants, represent the corporate entity.  See, e.g., Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y. 3d 553, 562 (2009) ("a corporation's attorney represents the corporate entity").  Here, the Receiver stands in the shoes of Cobalt, the corporate entity, and thus has standing to assert claims that would belong to Cobalt, such as claims for legal malpractice. See Wagoner, 944 F.2d at 120.  The issue of Law Firm Defendants'

fiduciary duty to shareholders is no barrier to the Receiver's standing at this stage of the litigation.

### D. Conclusion

Certilman Defendants have failed to establish that the Court committed clear error in the July 2009 Order. To the extent the Court improperly restricted its adverse interest analysis to the element of "intent," the Court now corrects its analysis and considers all relevant factors enumerated in the relevant case law. This renewed analysis leads to the identical conclusion as that reached in the Court's previous order. Accordingly, dismissal of the claims against Law Firm Defendants is not warranted and Certilman Defendants' motion for reconsideration is DENIED.

## IV. Motion for Interlocutory Appeal

Certilman Defendants request, in the alternative, that the Court certify its July 2009 Order for immediate appeal pursuant to 28 U.S.C. § 1292(b). For the reasons set forth below, the Court DENIES Certilman Defendants' motion.

### A. Legal Standard

A district court has the discretion to certify an order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) ("Section 1292(b)") if the court "is of the opinion that: (1) the order 'involves a controlling question of law'; (2) 'as to which there is substantial ground for difference of opinion'; and (3) 'an

immediate appeal of the order may materially advance the ultimate termination of the litigation.'" See Martens v. Smith Barney, Inc., 238 F. Supp. 2d 596, 599 (S.D.N.Y. 2002) (quoting 28 U.S.C. § 1292(b)).  Interlocutory appeals are an exception to the general rule of postponing appellate review until after entry of a final judgment.  Flor v. BOT Fin. Corp., 79 F.3d 281, 283-84 (2d Cir. 1996).

### B. Application

The Court finds that there is no "substantial ground for difference of opinion" warranting certification for immediate appeal of the July 2009 Order.  It further concludes that an immediate appeal would not materially advance the ultimate termination of the litigation.

The Court recognizes that recent decisions have considered the effect and application of the CBI Holding Co. discussion on corporate managers' "intent" in the context of the adverse interest exception analysis.  Insofar as there is a difference of opinion on this legal question, the Court finds that it would reach the same determination with respect to the Receiver's standing, including the appropriate application of the Wagoner rule, the adverse interest exception, and the sole actor exception, under any of the cited cases' interpretation of relevant standing doctrine.

Certifying the July 2009 Order would not advance the ultimate termination of the litigation, but would serve only to delay unnecessarily this longstanding litigation.  Accordingly, the Court declines to certify the July 2009 Order for interlocutory appeal.

## V. Conclusion

The Court finds no basis for reconsidering its July 2009 Order or for certifying the order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  The Court DENIES Certilman Defendants' motion for reconsideration and DENIES their motion for Section 1292(b) certification.  (D.E. 86.)

Based on the Court's decision to deny these motions, the Court finds that Certilman Defendants' Rule 72 Objections to Magistrate Judge Michael H. Dolinger's decision to deny a stay of discovery are moot.  Certilman Defendant's Rule 72 Objections are therefore DENIED.  (D.E. 102.)

Counsel for all parties shall (1) review the Court's model scheduling order, (2) confer and attempt to reach agreement as to what dates the parties propose that the Court so order in its Rule 16(b) scheduling order, and (3) on or before December 9, 2009, submit to the Court a joint proposed scheduling order, which will include deadlines for discovery, the filing of all motions, and submission of the pre-trial order, with a Ready Trial date of May 3, 2010.  To the extent that the parties

cannot agree on any proposed date, the joint proposed scheduling
order shall indicate which party proposes which date.


SO ORDERED.

Dated:     New York, New York
           November **30** , 2009


                              _Kimba M. Wood_
                                Kimba M. Wood
                          United States District Judge