```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
COBALT MULTIFAMILY INVESTORS I,              |
LLC, et al.,                                 |
                                             |
                    Plaintiffs,              |        06 Civ. 6468 (KMW) (MHD)
                                             |        OPINION & ORDER
       -against-                             |
                                             |
MARK A. SHAPIRO, et al.,                     |
                                             |
                    Defendants.              |
----------------------------------------------------------------X
```

KIMBA M. WOOD, UNITED STATES DISTRICT JUDGE:

Anthony Paduano, the court-appointed receiver (the "Receiver") for Plaintiffs Cobalt Multifamily Investors I, LLC, and its related entities, including Vail Mountain Trust (the "Trust") (collectively, "Cobalt") has moved for summary judgment against defendants Robert F. Cohen ("Cohen"), an attorney, and his law firm, Cohen & Werz LLC ("C&W") (collectively, the "Cohen Defendants") on claims of breach of fiduciary duty, unjust enrichment, conversion, and aiding and abetting. [Dkt. No. 211]. For the following reasons, the Receiver's motion for summary judgment is GRANTED in part and DENIED in part.

I. PROCEDURAL BACKGROUND

This case is related to an enforcement action filed by the Securities and Exchange Commission (the "SEC") in May 2006. *See S.E.C. v. Cobalt Multifamily Investors I, Inc.*, 06 Civ. 2360 (S.D.N.Y.) [hereinafter the "*SEC Enforcement Action*"]. The SEC's action arose out of a massive fraud perpetrated by three of Cobalt's principals—Mark A. Shapiro ("Shapiro"), Irving J. Stitsky ("Stitsky"), and William B. Foster ("Foster") (collectively, the "Cobalt Principals")—who allegedly "issued numerous false and misleading private placement memoranda and brochures," "engaged in a widespread cold-calling scheme to persuade members

1

of the public to invest millions of dollars in the Cobalt entities," and "then siphoned off much of the invested funds for their own personal use, and for other fraudulent purposes." *SEC Enforcement Action*, 542 F. Supp. 2d 277, 279 (S.D.N.Y. 2008) (Wood, J.).  In a criminal case charging the Cobalt Principals with the same conduct, all three were found guilty after a jury trial on substantive and conspiratorial counts of securities fraud, wire fraud, and mail fraud.  *See United States v. Shapiro*, 06 Cr. 357 (S.D.N.Y.).[1]

In the *SEC Enforcement Action*, Judge Mukasey appointed Anthony Paduano to act as temporary Receiver for Cobalt.  *See SEC Enforcement Action*, Dkt. No. 2 at 21–24 (S.D.N.Y. March 25, 2006).  On July 20, 2006, Judge Mukasey made the Receiver's appointment permanent.  *See id.*, Dkt. No. 56 at 1 (S.D.N.Y. July 20, 2006).

In August 2006, the Receiver filed this suit against the Cohen Defendants, as well as other defendants who have since settled or been dismissed.[2]  On April 30, 2013, the Receiver moved for summary judgment against the Cohen Defendants.  [Dkt. No. 211].  Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern

---

[1]  Foster died during pendency of his appeal from the criminal conviction.  His conviction and the underlying indictment were therefore dismissed.  *See Shapiro*, 06 Cr. 357, Dkt. Nos. 333–35 (S.D.N.Y. January 16, February 14, and February 28, 2013); *see also United States v. Wright*, 160 F.3d 905, 908 (2d Cir. 1998) ("[U]pon receiving notice of a defendant-appellant's death during the pendency of his direct appeal as of right, we normally vacate the judgment and remand to the district court with instructions to dismiss the indictment.").  Shapiro's and Stitsky's convictions were affirmed on appeal.  *See United States v. Stitsky*, 536 F. App'x 98 (2d Cir. 2013).

[2]  In addition to its claims against the Cohen Defendants, the Receiver also brought claims in this case against the Cobalt Principals and two other sets of attorneys and their law firms: Martin P. Unger and his firm, Certilman Balin Adler & Hyman LLC (the "Certilman Defendants"), and Philip Chapman and his firm, Lum, Danzis, Drasco & Positan LLC (the "Lum Defendants").  After the Cobalt Principals were convicted of securities fraud, the Receiver voluntarily dismissed its claims against them.  [Dkt. No. 63].  The Court previously dismissed the Receiver's claims against the Certilman Defendants, finding that the Receiver lacked standing to sue them.  *See Cobalt Multifamily Investors I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 435 (S.D.N.Y. 2012) (Wood, J.) [Dkt. No. 172].  The Receiver has since settled its claims with the Lum Defendants.  [Dkt. Nos. 229, 230].

Districts of New York ("Local Rule 56.1"),[3] the Receiver submitted a Local Rule 56.1 Statement of Material Facts. [Dkt. No. 214].

At the time the Receiver moved for summary judgment, the Cohen Defendants were represented by legal counsel. Prior to responding to the Receiver's motion, however, Cohen removed his counsel and began representing himself and his former law firm *pro se*. [Dkt. Nos. 215, 220].

On July 8, 2013, the Cohen Defendants submitted a memorandum of law in opposition to the Receiver's motion for summary judgment, [Dkt. No. 221], but they failed to submit a Responsive Statement of Material Facts, as required by Local Rule 56.1(b),[4] despite referencing Local Rule 56.1 in their memorandum's opening sentence. Because the Cohen Defendants were represented when the Receiver moved for summary judgment, they did not receive a Local Rule 56.2 Notice. (Local Rule 56.2 requires "[a]ny represented party moving for summary judgment against a party proceeding *pro se*" to submit a notice to the *pro se* litigant explaining the requirements of Local Rule 56.1 and the importance of summary judgment. Local R. 56.2.) On December 5, 2013, the Court issued an Order attaching the Local Rule 56.2 Notice and giving the Cohen Defendants an additional opportunity to file a Responsive Statement of Material Facts pursuant to Local Rule 56.1(b). [Dkt. No. 232 (citing Fed. R. Civ. P. 56(e)(1))]. Even after having been permitted this second opportunity, however, the Cohen Defendants did not file a Responsive Statement of Material Facts.

---

[3] Local Rule 56.1(a) provides that, "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local R. 56.1(a).

[4] Local Rule 56.1(b) provides that, "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local R. 56.1(b).

## II.     FACTUAL BACKGROUND

"A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009).  Under Local Rule 56.1(c), if a nonmoving party "fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); *see also* Fed. R. Civ. P. 56(e)(2).  However, "'[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.'" *Giannullo*, 322 F.3d at 140 (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001)).  The Court has therefore reviewed the supporting evidence for those paragraphs of the Receiver's Rule 56.1 Statement that are cited herein, and the Court finds those paragraphs to be adequately supported.

Cobalt's purported business was to acquire, develop, and market residential housing properties.  (Receiver's 56.1 Stmt. ¶ 17).  Cobalt raised capital for its operations through the sale of securities of Cobalt Multifamily Investors I, LLC to public investors.  (*Id.* ¶ 15).  Cobalt solicited investors to purchase these securities through private placement memoranda, which contained numerous misrepresentations.  (*Id.* ¶¶ 16, 18).  For instance, the private placement memoranda made no mention of Shapiro's or Stitsky's roles at Cobalt or their criminal histories; in 2001, Shapiro was convicted of bank fraud and conspiracy to defraud the Internal Revenue Service, and in 2002, Stitsky was convicted of conspiracy to commit securities fraud.  (*Id.* ¶¶ 20–23).  Cobalt raised more than $22 million from more than 300 investors.  (*Id.* ¶ 24).

Cohen is—and at all relevant times was—an attorney licensed to practice law in the state of Connecticut.  (*Id.* ¶ 26).  From 2002 until December 31, 2007, Cohen was a partner of C&W; as of December 31, 2007, the firm was dissolved.  (*Id.* ¶¶ 27–28).  From January 1, 2008, until present, Cohen has been practicing law as a solo practitioner.  (*Id.* ¶ 29).

Cohen represented Shapiro and his companies on matters beginning in the 1980s, involving eviction proceedings, general litigation, divorce proceedings, and real estate closings.  (*Id.* ¶¶ 30, 33).  Prior to beginning any work on behalf of Cobalt, Cohen was aware that Shapiro had been convicted of felony fraud offenses.  (*Id.* ¶¶ 31–32).

The real estate matters in which Cohen represented Shapiro and Cobalt included the closing of a second mortgage for Cobalt's office in Springfield, Massachusetts; the purchase of a house in Glastonbury, Connecticut; and the purchase of condominium units in Miami Beach, Florida.  (*Id.* ¶ 34).  Cohen purchased the house in Glastonbury and one of the Miami Beach condominium units in his own name, and he took out several mortgages on the latter, even though both properties were intended to be residences for Shapiro.  (*Id.* ¶¶ 35–36).  Cohen never asked Shapiro why Shapiro did not want to purchase the properties in his own name.  (*Id.* ¶ 37).

At Shapiro's request, Cohen prepared the documents for the creation of a trust, the Vail Mountain Trust (the "Trust"), under Connecticut law, and he served as its trustee.  (*Id.* ¶¶ 38–39).  The beneficiary of the Trust is listed as Due Diligence, LLC ("Due Diligence").  (*Id.* ¶ 40).  The Trust provides that Cohen, as trustee, is "to use and expend any part of the current net income and/or any part of the principal of this Trust, for the benefit of Due Diligence, LLC, during its existence, and upon its termination, to its successors …."  (*Id.* ¶ 41).  Shapiro asked Cohen to set up the Trust as a spendthrift trust, so that the proceeds would be free from creditors.  (*Id.* ¶ 42).  The Trust contained an inalienability clause providing that: "No beneficiary shall

5

have the right to alienate in any way part of the income or principal of the trust or the separate trusts, and payment from the trusts shall be made directly to the beneficiary or its legal representatives, or deposited in a bank to its credit, free from the interference or control of the creditors of the beneficiary." (*Id.* ¶ 43). At no time did Cohen ask Shapiro what Due Diligence was or why Shapiro wanted Due Diligence listed as the beneficiary of the Trust. (*Id.* ¶ 44). Cohen prepared the restated trust documents for the Trust, in which the beneficiary remained Due Diligence. (*Id.* ¶ 47).

The Trust provided that Cohen, as Trustee, was entitled to "reimbursement for expenses incurred" in the Trust's administration and "reasonable compensation," which would "be deemed reasonable if it does not exceed, the greater of $1,000 or 1% of the income of the trust" per year. (*Id.* ¶ 45). Cohen offered no testimony that income was generated by the Trust. (*Id.* ¶ 46).

The Trust was related to Cobalt. (*Id.* ¶ 38). At least nearly $2.8 million of Cobalt funds were transferred from Cobalt to the Trust's bank accounts. (*Id.* ¶¶ 25, 50). According to Cobalt's corporate documents, the Trust owned portions of various Cobalt entities: eighty percent of Cobalt Financial Inc., forty percent of Cobalt Realty Trust, and seventy-nine percent of Cobalt Capital Partners LP; Cobalt Capital Partners LP in turn owned ninety-nine percent of Cobalt Capital Funding LLC, as well as significant portions of other Cobalt entities. (*See* Decl. of Steven Castaldo in Supp. of the Receiver's Mot. for Summ. J., Ex. 4).[5] Documents indicate that Due Diligence was also within the Cobalt corporate structure. (*See id.*, Ex. 1). In Due Diligence's Articles of Organization, Cohen is listed as its registered agent and its sole managing member is Kevin Tierney, (*id.*) who is identified as a consultant for Cobalt in one of the

---

[5] The Receiver submitted the Castaldo Declaration on February 7, 2014, in response to a request from the Court for supplemental briefing. [*See* Dkt. No. 233]. The Cohen Defendants did not submit a response.

company's private placement memoranda, (*id.*, Ex. 2). The private placement memorandum similarly states that Tierney "is founder and Manager of Due Diligence, LLC." (*Id.*).

While serving as trustee, Cohen did not know (i) how many checks were being written on the Trust bank accounts; (ii) how much money was placed in or taken out of the Trust; or (iii) the source or recipients of that money. (Receiver's 56.1 Stmt. ¶¶ 49, 63). Cohen did not receive or review bank statements or canceled checks for the Trust's accounts; instead they were sent to Shapiro at Cobalt's offices. (*Id.* ¶¶ 64–66). Cohen did not contact the banks to find out why he was not receiving statements or canceled checks. (*Id.* ¶ 67). Cohen also has no recollection of reviewing any Trust tax returns or providing any information for their preparation. (*Id.* ¶ 72). Cohen signed up to ten blank checks from a Trust bank account and gave the signed blank checks to Shapiro for his use. (*Id.* ¶ 73). The Receiver found nine blank checks in Cobalt's offices after his appointment. (*Id.* ¶ 74). Cohen did not maintain the checkbooks for the Trust accounts at all times; instead, they were frequently maintained by Shapiro at Cobalt's offices. (*Id.* ¶¶ 75–76).

Cohen caused or allowed Trust funds to be disbursed to himself, Shapiro, Stitsky, Foster, and others on their behalf. (*Id.* ¶¶ 77–79). Cohen either signed, or allowed his name to be signed, on checks from the Trust accounts to:

- Himself or his law firm, C&W, totaling $166,752.98. (*Id.* ¶ 86).
- Construction companies and architects in connection with expenses for Shapiro's residences, including renovations of his house in Glastonbury, Connecticut, totaling $619,836.61. (*Id.* ¶ 80).
- Car companies for cars purchased or leased for Shapiro's benefit, totaling $130,660.50. (*Id.* ¶ 81).
- A jewelry company for payment of jewelry purchased for or on behalf of Shapiro, totaling $20,000.00. (*Id.* ¶ 82).
- Shapiro, totaling $20,259.85. (*Id.* ¶ 83).
- Stitsky, totaling $54,200.00. (*Id.* ¶ 84).
- Foster, totaling $22,500.00. (*Id.* ¶ 85).

7

Cohen acknowledged in his deposition that he had violated the terms of the Trust by allowing Shapiro to direct distribution of the Trust's funds, and he acknowledged that, as trustee, his fiduciary duties required him to file income tax returns on behalf of the Trust.  (*Id.* ¶¶ 68, 72).

Cohen also served as "trustee" on approximately five trustee bank accounts relating to Cobalt.  (*Id.* ¶ 51).  After the FBI raided Cobalt's offices in December 2005 and froze the company's bank accounts, Shapiro, Foster, and attorney Martin Leppo (who represented Shapiro in his criminal matters), asked Cohen to open bank accounts on behalf of Cobalt, which Cohen did in January 2006.  (*Id.* ¶¶ 52–53).[6]  Cohen opened the accounts in his own name, and explained at his deposition that he had to call himself a trustee to do so, because he was not an owner, officer, or director of the various Cobalt entities.  (*Id.* ¶ 56).  Cohen did not know, nor did he ask why, Shapiro wanted him to open the accounts in Cohen's name, although Cohen thought it was odd.  (*Id.* ¶¶ 54–55, 87).

Cohen's only affirmative action with respect to these five accounts after opening them was to sign checks, which he did for one month, from January to February 2006.  (*Id.* ¶¶ 57, 61).  Shapiro sent checks to Cohen by messenger from Cobalt's office in Springfield, Massachusetts to Cohen's office in Bristol, Connecticut; Cohen was instructed to sign the checks, which would then be returned by messenger to Cobalt's office.  (*Id.* ¶¶ 58–59).  Cohen believed the checks were for payroll and other expenses of Cobalt, although he was not certain and did no investigation.  (*Id.* ¶ 60).  Cohen did not know where Cobalt and Shapiro were getting assets to put into the new accounts, and he neither asked nor investigated.  (*Id.* ¶ 88).  In or about February 2006, Cohen informed Shapiro that he did not want to sign the checks any longer,

---

[6]  Also after the FBI's raid, which included freezing Trust accounts, Cobalt opened a new back account for the Trust.  (*Id.* ¶ 69).  Cohen did not know where assets for this account would come from, and he did not ask.  (*Id.* ¶ 70).

8

although he allowed Shapiro and Cobalt to continue to use the accounts and did not take any steps to have the accounts closed. (*Id.* ¶ 62). Cohen did not monitor these accounts, never reviewed account statements, and did not maintain the checkbook for the accounts. (*Id.* ¶¶ 89–91).

The trustee accounts were funded by Cobalt money, (*id.* ¶ 92), which was then moved between the various trustee accounts and the Trust and distributed, at least in part, to Shapiro, Stitsky, and Foster, (*id.* ¶ 93). Money from these Cobalt accounts were paid to:

- Shapiro, in the amount of $3,125.52, and to a jewelry company, for Shapiro's benefit, in the amount of $8,551.75. (*Id.* ¶¶ 95, 98).
- Stitsky, in the amount of $5,404.27. (*Id.* ¶ 96).
- Foster, in the amount of $112,814.69. (*Id.* ¶ 97).[7]

## III. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*; *see also Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether there are genuine disputes of material fact, the Court "must 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor

---

[7] The Receiver also states that $233,500.00 from the Cobalt accounts were distributed to Cohen. (*Id.* ¶ 94). The Court notes, however, that based on the canceled checks and deposition testimony about them, these distributions might have been transfers between the various trustee bank accounts and not payments directly to Cohen. (*See* Decl. of Anthony Paduano in Supp. of the Receiver's Mot. for Summ. J., Ex. W; *id.*, Ex. G, Cohen Deposition Tr., at 243–54).

of the party opposing summary judgment.'" *Roe*, 542 F.3d at 35 (quoting *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001)).

## IV. DISCUSSION

The Receiver moves for summary judgment on four claims: (i) breach of fiduciary duty, against Cohen and C&W; (ii) unjust enrichment, against Cohen; (iii) conversion, against Cohen; and (iv) aiding and abetting the fraud, conversion, and breaches of fiduciary duties of the Cobalt Principals, against Cohen. The Receiver has shown that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law on some, but not all, of these claims. Specifically, the Court grants summary judgment against Cohen for breach of fiduciary duty, unjust enrichment, and conversion. The Court denies summary judgment against C&W for breach of fiduciary duty, and denies summary judgment against Cohen for aiding and abetting.

### A. Choice of Law

In addressing the Receiver's first three claims, the parties cite both New York and Connecticut law; neither party has identified a meaningful difference between the states' laws.[8] "[C]ourts sitting in diversity may properly rely on the forum state's law where neither party asserts that another jurisdiction's law meaningfully differs." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 276 n.2 (2d Cir. 2013); *see also Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (stating that, in the absence of a conflict, "if New York law is

---

[8] *Cf. Stanley v. Skowron*, 958 F. Supp. 2d 417, 424 (S.D.N.Y. 2013) (Scheindlin, J.) (finding "no conflict between Connecticut and New York law governing the … breach of fiduciary duty claims"); *Czech Beer Importers, Inc. v. C. Haven Imports, LLC*, 04 Civ. 2270, 2005 WL 1490097, at *6 (S.D.N.Y. June 23, 2005) (Casey, J.) ("The laws of New York and Connecticut are in agreement regarding Plaintiff's unjust-enrichment claims."); *Alliance Grp. Servs., Inc. v. Grassi & Co.*, 406 F. Supp. 2d 157, 169 (D. Conn. 2005) (noting the similarity in "the standard for conversion claims in Connecticut and New York").

among the relevant choices, New York courts are free to apply it").[9] This Court previously suggested, however, that were there to be a conflict of law with respect to these claims, "it is likely that Connecticut law governs," because "the allegations that form the basis of these claims primarily, if not exclusively, revolve around the Cohen Defendants' creation and administration of the Connecticut-based Vail trust." *Cobalt Multifamily Investors I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 434 n.10 (S.D.N.Y. 2012) (Wood, J.). The Court will therefore cite primarily to Connecticut law in addressing the merits of the Receiver's claims, assuming, as the parties do, that New York law warrants no different conclusion. *See Johnson*, 711 F.3d at 275–76 (relying "mainly on Connecticut law in addressing the merits of [the plaintiffs'] claim," where the parties agreed that "the laws of Connecticut and Illinois are the same" with respect to the claim and the plaintiffs did not "contend otherwise" on appeal).

With respect to only the Receiver's fourth claim—for aiding and abetting—Cohen disputes the Receiver's assertion that Connecticut and New York law are in accord. Cohen contends that, unlike Connecticut courts, "New York courts have not recognized civil actions for aiding and abetting." (Cohen Defendants' Objection to the Receiver's Mot. for Summ. J., at 6 [Dkt. No. 221]). Cohen provides no citation for this assertion, and it is mistaken. *See, e.g.*, *Beach v. Citigroup Alternative Investments LLC*, 12 Civ. 7717, 2014 WL 904650, at *21 (S.D.N.Y. Mar. 7, 2014) (Castel, J.) (stating the elements for aiding and abetting fraud under New York law); *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (App. Div. 2003) (same for aiding

---

[9] In a federal action based on diversity of citizenship, a court applies the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Matter of Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993). "Choice of law does not matter," therefore, "unless the laws of the competing jurisdictions are actually in conflict." *Int'l Bus. Machines Corp.*, 363 F.3d at 143. "Laws are in conflict '[w]here the applicable law from each jurisdiction provides different substantive rules.'" *Id.* (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)). "In the absence of substantive difference … a New York court will dispense with choice of law analysis …." *Id.*

and abetting breach of fiduciary duty); *see also In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 530, 532 (S.D.N.Y. 2007) (McMahon, J.) (finding that Connecticut and New York law did not conflict for various claims, including aiding and abetting).  Hence, the Court will also cite primarily to Connecticut law in addressing the Receiver's aiding and abetting claim.

### B.     The Receiver Has Standing to Assert Claims On Behalf Of the Trust and Its Beneficiary

The Cohen Defendants assert that the Receiver lacks standing to assert claims on behalf of the Trust and its beneficiary.  They are wrong.  The Receiver was appointed to preserve and marshal the assets of the Trust, among his other duties, and he may therefore assert claims that the Trust could assert.  *See SEC Enforcement Action*, 06 Civ. 2360, Dkt. No. 2 at 21–22 (March 25, 2006) (empowering the Receiver to "[t]ake and retain immediate possession and control of all of the assets and property of … Vail [Mountain Trust] … and the rights and powers of it with respect thereto"); Ralph S. Janvey, *An Overview of SEC Receiverships*, 38 Sec. Reg. L.J. 89 (2010) ("'In a general receivership embracing all the defendants' assets, the choses in action and claims in favor of the defendant are included.'"  (quoting 2 Ralph Ewing Clark, *A Treatise on the Law and Practice of Receivers*, Ch. XIII, § 365, 623 (3d ed. 1959)); *see, e.g.*, *Kriebel v. Munsey*, 862 N.Y.S.2d 815 (Sup. Ct. 2008) (granting summary judgment to a court-appointed successor trustee on claims of breach of fiduciary duty against a defendant predecessor trustee).

C. **Breach of Fiduciary Duty**[10]

Under Connecticut law, to establish a breach of fiduciary duty, the plaintiff must prove:

> (1) That a fiduciary relationship existed which gave rise to (a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in any matter relating to the plaintiff; (2) That the defendant advanced his or her own interests to the detriment of the plaintiff; (3) That the plaintiff sustained damages; (4) That the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty.

*Culhane v. Culhane*, 11 Civ. 1799, 2013 WL 4545700, at *10 (D. Conn. Aug. 28, 2013) (quoting *Stedman v. Stedman*, HHDCV106008073S, 2012 WL 6122487, at *3 (Conn. Super. Ct. Nov. 14, 2012)).[11]

1. <u>Cohen</u>

The Receiver has met his burden of showing that there are no genuine issues of material fact as to these elements with respect to Cohen. Cohen, as trustee, had a fiduciary duty "'to exercise such care and skill as a person of ordinary prudence would exercise'" in managing the Trust. *Lofts on Lafayette Condo. Ass'n, Inc. v. Lancaster Gate, LLC*, FBTCV094027725S, 2010 WL 937273, at *8 (Conn. Super. Ct. Feb. 17, 2010) (quoting *Lintgeris v. Lintgeris*, UWYCV085008846S, 2009 WL 1815058, at *2 (Conn. Super. Ct. June 3, 2009)); *see also*

---

[10] In his Complaint, the Receiver's seventh cause of action asserts a breach of both fiduciary duty and the duty of loyalty. (*See* Compl. at 40–41 [Dkt. No. 1]). The Receiver's motion for summary judgment similarly states that the Receiver moves on its claim for "breach of fiduciary duty/breach of duty of loyalty as against the Cohen Defendants." (Receiver's Notice of Mot. for Summ. J. at 2 [Dkt. No. 211]). The Receiver's memorandum of law in support of its motion, however, does not distinguish between a breach of fiduciary duty and a breach of the duty of loyalty and, in fact, it cites only to the elements required "to establish a breach of a fiduciary duty." (Receiver's Mem. of Law in Supp. of Summ. J. at 6 [Dkt. No. 212]). This is not surprising, given that Connecticut courts have held that "breach of the duty of loyalty is simply a subset, or element, of breach of a fiduciary duty." *Saye v. Old Hill Partners, Inc.*, 478 F. Supp. 2d 248, 269–70 (D. Conn. 2007) (internal quotations omitted) (collecting cases). The Court therefore analyzes the Receiver's claim as one for breach of fiduciary duty.

[11] *Cf. Ball v. Cook*, 11 Civ. 5926, 2012 WL 4841735, at *8 (S.D.N.Y. Oct. 9, 2012) (Sullivan, J.) ("Under New York law, a claim for breach of fiduciary duty has three elements: (1) "the existence of a fiduciary duty"; (2) "a knowing breach of that duty"; and (3) "damages resulting therefrom." (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011))).

*Hoffman v. First Bond & Mortgage Co. of Hartford*, 164 A. 656, 658 (Conn. 1933) (stating that a trustee is "bound to use the same diligence and care" that "a prudent man would use in protecting his own interests"). Moreover, a "trustee must always be loyal to his trust." *Hall v. Schoenwetter*, 686 A.2d 980, 983 (Conn. 1996) (internal quotations and citations omitted) (adding that a trustee must "exclude all selfish interest and also all consideration of … third persons"); *see also In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 681 (S.D.N.Y. 1997) (Sweet, J.) ("The trustee may not passively permit another party to harm the trust.")

Cohen plainly breached his fiduciary duty by failing to exercise appropriate care in serving as trustee for the Trust. Cohen was ignorant of how much money was received and disbursed by the Trust, as well as the source of the funds and to whom they were disbursed. He did not receive or review bank statements or canceled checks for the Trust's accounts, which instead were sent to Cobalt's offices, and he has no recollection of preparing the Trust's tax returns. (Receiver's 56.1 Stmt. ¶¶ 63–66, 72). He also caused or allowed Trust funds to be disbursed to himself, Shapiro, Stitsky, Foster, and others for their benefit. (*Id.* ¶¶ 78–86). Cohen gave Shapiro signed, blank checks from the Trust's accounts, and at times he permitted Shapiro to maintain the checkbooks for the Trust accounts. (*Id.* ¶¶ 73–76). Cohen even acknowledged at his deposition that he had violated the terms of the Trust by allowing Shapiro to direct distribution of the Trust's funds. (*Id.* ¶ 68). As a result of Cohen's breach, the Trust and its beneficiary were damaged by the loss of substantial funds. (*See id.* ¶¶ 80–86, 99–104).

In his opposition memorandum, Cohen contends, without citation, that he was "unaware that Due Diligence was not a legitimate Shapiro entity," perhaps implying that his abandonment of the control and management of the Trust to Shapiro was therefore proper. (*See* Cohen Defendants' Objection at 4). Yet, at no time did Cohen ask Shapiro what Due Diligence was or

14

why Shapiro wanted Due Diligence listed as the beneficiary of the Trust.  (Receiver's 56.1 Stmt. ¶ 44).  Nor has Cohen disputed the Receiver's assertion that the Trust was related to Cobalt, (*id.* ¶ 38), which is supported by the corporate documents of both Due Diligence and Cobalt, (*see* Castaldo Decl., Exs. 1, 4).  Moreover, where a trustee is found to have mismanaged the trust, "the question of good faith and honesty of purpose is unimportant." *In re Osborn*, 299 N.Y.S. 593, 601 (App. Div. 1937).

    2.   C&W

The Receiver notes correctly that, under Connecticut law, partnerships can be held liable for the wrongful acts of their partners.  *See* Conn. Gen. Stat. § 34-326.  However, it is not clear from the Receiver's submissions that Cohen, in serving as trustee, was acting in the ordinary course of the partnership's business or with the authority of the partnership, as would be required to find the partnership liable.  *See id.*; *Sheridan v. Desmond*, 697 A.2d 1162, 1165 (Conn. App. Ct. 1997) ("[L]iability is imposed on a partner for the tortious acts of his partner only where (1) the act occurred in the ordinary course of the partnership's business, or (2) the tortfeasor partner acts with the authority of his partner or partners."); *see also Thompson v. Orcutt*, 800 A.2d 530, 536 (Conn. App. Ct. 2002) ("To conclude that the plaintiff's conduct occurred within the scope of partnership business, that conduct must have (1) occurred substantially within the authorized time and geographic limits of the partnership, (2) been the kind of activity that a person engaged in the particular business would perform and (3) been motivated at least in part by a purpose to serve the partnership." (citing *Sheridan*, 697 A.2d at 1165–66)).  The Court therefore denies summary judgment on the Receiver's breach of fiduciary duty claim against C&W.[12]

---

[12]   Because it is possible that summary judgment might be appropriate were the parties to more fully address this issue, the Receiver may renew its motion for summary judgment on this claim within thirty days of this Opinion and Order, assuming it can point to the requisite factual support in the record.

**D.     Unjust Enrichment**

"Unjust enrichment is a very broad and flexible equitable doctrine that has as its basis the principle that it is contrary to equity and good conscience for a defendant to retain a benefit that has come to him at the expense of the plaintiff." *Gagne v. Vaccaro,* 766 A.2d 416, 427–28 (Conn. 2001). "'Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiff's detriment.'" *Culhane v. Culhane*, 11 Civ. 1799, 2013 WL 4545700, at *9 (D. Conn. Aug. 28, 2013) (quoting *Trenwick Am. Reinsurance Corp. v. W.R. Berkley Corp.*, 54 A.3d 209, 218 (Conn. App. Ct. 2012)).[13]

The Receiver has shown that he is entitled to summary judgment on his unjust enrichment claim. Cohen wrote checks to himself and C&W from the Trust's bank accounts, totaling $166,752.98. (Receiver's 56.1 Stmt. ¶ 86).[14] These funds came from Cobalt, (*see id.* ¶¶ 25, 50), and yet there is no evidence that Cobalt or the Trust received meaningful and commensurate services in exchange for these payments. Indeed, under the terms of the Trust, Cohen, as trustee, was entitled to compensation not to exceed the greater of $1,000 or 1% of the Trust's annual income, (*id.* ¶ 45), and he offered no testimony that income was generated by the Trust, (*id.* ¶ 46). It would be contrary to equity and good conscience for Cohen to retain payments of Cobalt funds in substantial excess of what he was entitled to retain.

---

[13]     *Cf. Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) ("The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.").

[14]     Cohen might have also received money from the various Cobalt trustee bank accounts. (*Id.* ¶ 94).

**E.     Conversion**

"Under Connecticut law, conversion is 'an unauthorized assumption and exercise of the right of ownership over property belonging to another, to the exclusion of the owner's rights.'" *Joe Hand Promotions, Inc. v. Trenchard*, 12 Civ. 1099, 2014 WL 854537, at *5 (D. Conn. Mar. 3, 2014) (quoting *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 934 A.2d 227, 234 (Conn. 2007)).[15] The elements of conversion are: "(1) the material at issue belonged to the plaintiff, (2) that [defendant] deprived the plaintiff of that material for an indefinite period of time, (3) that [defendant's] conduct was unauthorized and (4) that [defendant's] conduct harmed the plaintiff." *News Am. Mktg. In-Store, Inc. v. Marquis*, 862 A.2d 837, 848 (Conn. App. Ct. 2004). "The intent required for a conversion is merely an intent to exercise dominion or control over an item even if one reasonably believes that the item is one's own." *Plikus v. Plikus*, 599 A.2d 392, 395 (Conn. App. Ct. 1991). Under Connecticut law, "[m]oney can clearly be subject to conversion." *Omar v. Mezvinsky*, 537 A.2d 1039, 1041 (Conn. App. Ct. 1988).

The Receiver has shown that he is entitled to summary judgment on his conversion claim. Cohen's actions that constituted unjust enrichment similarly satisfy the requirements of conversion. The funds Cohen withdrew to himself and C&W from the Trust came from Cobalt, depriving Cobalt of those funds to its detriment. The Trust documents did not authorize these transfers, and there is no evidence that the transfers were otherwise properly authorized. (*See, e.g.*, Decl. of Anthony Paduano in Supp. of the Receiver's Mot. for Summ. J., Ex. G, Cohen Deposition Tr. 185–86 (Cohen affirming that he had signed a check from a Trust bank account to himself for $23,152.98, but not recalling what the check was for, confirming that it was not for

---

[15]     *Cf. Newbro v. Freed*, 409 F. Supp. 2d 386, 394 (S.D.N.Y. 2006) (Castel, J.) ("In New York, '[c]onversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession.'" (quoting *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997))).

attorney's fees or trustee compensation, and stating that he did not think there was any documentation that would explain what the check was for) [Dkt. No. 213]).

F.   **Aiding and Abetting**

"In Connecticut, a plaintiff pleads aiding and abetting by alleging that '(1) the party aided by the defendant performed a wrongful act; (2) the defendant generally was aware of his role as part of an illegal or tortious activity at the time he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation.'" *Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 195 (D. Conn. 2007) (quoting *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 102–03 (D. Conn. 1994)).[16] Although "'a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (App. Div. 2003)).

The Receiver has not satisfied the requirements for summary judgment with respect to his aiding and abetting claim. It is plain that the Cobalt Principals performed wrongful acts. But the Court finds a genuine dispute of fact as to whether Cohen was aware of the Cobalt Principals' fraud and knowingly provided substantial assistance to it. Although the Receiver has cited to circumstantial evidence that Cohen knew of the Cobalt Principals' improper activity and understood that his actions were assisting their fraud, there is no direct evidence demonstrating that Cohen had the requisite awareness. Cohen, moreover, stated at his deposition that he had no knowledge of the Cobalt Principals' fraud. (*See, e.g.*, Paduano Decl., Ex. G, Cohen Deposition Tr. 45); *cf. Anderson*, 477 U.S. at 255 (explaining that "[c]redibility determinations, the

---

[16]   *Cf. Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009) (Lynch, J.) (noting that, "[u]nder New York law, the elements of aiding and abetting a breach of fiduciary duty, aiding and abetting a conversion, and aiding and abetting a fraud are substantially similar," and that the "claims require the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance").

18

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," and that, at summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor").

## V.     CONCLUSION

For the reasons stated above, the Receiver's motion for summary judgment is GRANTED in part and DENIED in part.  Specifically, summary judgment on the Receiver's claims against Cohen for breach of fiduciary duty, unjust enrichment, and conversion is granted; and summary judgment on the Receiver's claim against Cohen for aiding and abetting, and on the Receiver's claim against C&W for breach of fiduciary duty, is denied.  The Clerk of the Court is respectfully directed to terminate the motion.  [Dkt. No. 211].

Although the Receiver's 56.1 Statement includes a "Summary Of Improper Distributions," the Receiver does not specifically state what amount in damages should be awarded on each of his claims or whether damages can be properly determined at summary judgment.  Within thirty days of the date of this Opinion and Order, the Receiver shall: (i) if he seeks summary judgment on damages, file a motion for summary judgment on damages (along with a 56.1 statement); and (ii) submit a letter stating whether he intends to pursue his outstanding claims, and, if so, how he intends to pursue them.

SO ORDERED.

Dated: New York, New York
       March 28, 2014

_____/s/_____
Kimba M. Wood
United States District Judge